Peck *v.* Hiler.

[KINGS GENERAL TERM, February 13, 1860. *Lott, Emott* and *Brown,* Justices.]

## PECK *vs.* HILER.

A judgment will not be set aside, and a new trial granted, on the grounds of *surprise* or *newly discovered evidence,* where the party has been guilty of laches, in making his motion; where the new evidence would be cumulative in its nature; or after judgment has been entered.

And though the plaintiff's evidence be a surprise upon the defendant, yet the defendant may, by his own conduct, preclude himself from all relief on that ground.

Thus, where the defendant, though present at the trial, instead of asking for a postponement on the ground that the plaintiff's evidence was a surprise upon him, examined a witness on the subject testified to by the plaintiff's witnesses, and sought to show by him that the facts to which they had sworn were not true; and at the close of the testimony, agreed that the written points of both parties should be submitted for the consideration of the court, without any suggestion of surprise, or any request that the decision should not be made on the case as it stood; and in consequence of his omission to furnish his points, nearly seven months elapsed before the decision of the judge was made; several motion terms in the mean time having been held, at which an application could have been made by him to open the case; instead of doing which, he permitted the court to examine and decide upon the evidence adduced, without any interference or complaint on his part; and gave no intimation of having been surprised by the plaintiff's evidence, until three months after the decision of the court was made;

Peck *v.* Hiler.

*it was held* that the defendant, by his conduct, must be presumed to have been willing to abide by the decision of the court on the questions of fact presented for its determination; and that he could not repudiate and reject that decision after it was found to be adverse to him.

APPEAL by the defendant from an order made at a special term, denying a motion for a new trial, on a case and affidavits, on the grounds of surprise and newly discovered evidence. The material facts will be found in the opinion of the court. The action has been twice tried. On the first trial the plaintiff recovered a judgment, which, upon a case made, was set aside, and a new trial ordered. (*See* 24 *Barb.* 119, *S. C.*)

*Calvin Frost,* for the plaintiff.

*William Tracy,* for the defendant.

*By the Court,* LOTT, P. J. This case was tried before one of the justices of this court, without a jury, on the 25th day of October, 1858. On the trial it became a material inquiry whether the acts of the plaintiff in the tearing up and removal of some rails from a rail road, claimed by the defendant to form a part of certain premises demised to him by the plaintiff, constituted a partial eviction. The plaintiff, to avoid the effect of those acts, introduced evidence tending to show that the road had become useless, and that the defendant himself had previously taken up and removed a portion of the rails therefrom, and thus contributed to make it impassable. Although the defendant objected to the introduction of that evidence as inadmissible within the issues, he did not profess to be surprised thereby, but produced and examined his overseer and managing agent, to prove that such removal had not been made by him or his servants. After the testimony was closed on both sides, it was agreed between the counsel for the respective parties that written points should be submitted to the court. That arrangement was, however, not carried out till March or April, 1859. A decision by the justice was con-

sequently delayed and was not made till in May thereafter, when he decided in favor of the plaintiff. Judgment on that decision was, after a previous notice of taxation duly given, entered on the 30th day of that month. In June the defendant, on an affidavit that he was taking measures to move for a new trial, upon the ground of newly discovered evidence, obtained an extension of time to make a case and prepare affidavits for that purpose. A case was accordingly made, which was settled on or about the 10th day of July, 1859; and on the 19th of August a notice was given by the defendant's attorney that he would, on such case and on affidavits served therewith, move the court, at a special term to be held in September, that the judgment be set aside, and a new trial ordered, *on the ground of surprise,* and on the further ground of newly discovered evidence. That motion was made before the justice who tried the case, and after consideration was denied by him, on the following grounds: 1. Because the new evidence would be cumulative in its nature; 2. Because the defendant had been guilty of laches in making his motion; and 3. Because the motion was too late after judgment had been entered. An order on that decision was entered, and the case now comes before us for review on appeal.

After a careful examination we are of opinion that the order must be affirmed. The motion concedes that the evidence introduced by the plaintiff was material to the issue, because it is in this view only that it can be important for the defendant to avail himself of the evidence he now seeks to adduce for the purpose of contradicting it.

The question then arises, whether he was excusable in not introducing it on the trial. It is a well settled rule, that a party is bound and presumed to know the general leading points which will be litigated in his case, and that he must procure all the evidence, which, with ordinary diligence, he might have procured, in relation to those points.

The reply to the matter pleaded as an eviction makes no allusion to the removal of the rails by the plaintiff, but alleges

that the road was out of repair and entirely unfit for use at the time of the demise, and so remained and continued until the removal of the rails by the plaintiff—being the acts set up as an eviction—and then avers that the defendant, after said removal, and with full knowledge thereof, paid to the plaintiff the rent that had subsequently accrued. These allegations, in our opinion, warranted the defendant in the conclusion that no other affirmative acts than those specified would be relied on in avoidance of the defendant's answer. He was therefore not chargeable with a want of due diligence in not being prepared to produce the testimony he now seeks to introduce for the purpose of showing that no rails were in fact removed by the defendant; and the plaintiff's evidence charging him with such removal was calculated to operate as a surprise on him, although it is fairly inferable that it did not, and that his surprise resulted from the adverse decision. But assuming it to be otherwise, he has precluded himself from all relief on that ground. He was personally present at the trial, and instead of asking for a postponement, he examined his overseer in relation to the subject, and sought to show by him that the facts to which the plaintiff's witnesses had testified were not true in fact. Nor is that all. After the testimony was closed, it was agreed, as already stated, that the written points should be submitted for the consideration of the court, without any suggestion of surprise, or any request that the decision should not be made on the case as it stood. Nearly seven months elapsed, in consequence of the omission to furnish such points, before the decision of the judge was in fact made. Several motion terms in the mean time elapsed. At any of these an application could have been made by the defendant to open the case. Instead of doing this, he permits the court to examine and decide upon the evidence adduced, without any interference or complaint, and even after the decision is made, no intimation of any surprise is given until some three months afterwards. By this course of conduct he must be presumed to have been willing to abide by the decision

Peck *v.* Hiler.

of the court on the questions of fact presented for its determination; and it would be unreasonable, not to say unjust, while he could have availed himself of the benefit of that determination, if it had been favorable to him, to extend to him the right to repudiate and reject it after it is found to be adverse. Having taken this course, he cannot invoke the aid of the court to relieve him.

These views dispose of the application as far as it is founded on surprise. It then remains to be considered whether any relief can be given, on the ground of newly discovered evidence. It is a settled principle, applicable to such motions, that if the newly discovered evidence consists merely of additional facts and circumstances going to establish the same points which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative, and a new trial should not be granted. (*The People* v. *Superior Court of New York, 5 Wend.* 127.) Applying this principle to the case under consideration, the motion was properly denied. The fact in controversy was whether the defendant had removed any rails before the acts of the plaintiff charged as an eviction, which are conceded to have been done in April, 1853. The evidence of the plaintiff on that point, was the testimony of two persons swearing to the fact of such removal on two different occasions in 1852, by workmen of the defendant under the charge of his overseer. One of them speaks as to one time and locality, and the other as to another time and place. The overseer was examined and sworn, and he testified on that subject as follows: "There never was any rail removed from the road by the defendant's men, to my knowledge. I was removing the earth from the rail road at the red bank, (which was one of the localities designated by the plaintiff's witnesses *above* the chemical works,) to get at the road. I was examining the state of the road with a view of repairing it at that time, and did not take up any of the rails from the rail road *below* the chemical works, (the other locality referred to,) before July, 1854."

The testimony claimed to be newly discovered, as disclosed by the affidavits of some twenty-six different individuals, with the exceptions which will hereafter be noticed, is general, of persons employed by the defendant about his mill and premises, but not at the localities referred to, and of other individuals acquainted with the road, who frequently passed over it, and say they did not discover that any rails were removed. This does not negative or disprove the fact alleged by the plaintiff's witnesses, and which I may say is confirmed by the affidavits of four other persons produced in opposition to the motion, but is corroborative merely of the overseer's testimony. The exceptions referred to are the declarations of Edward C. Remer, who was the overseer, and of John Cordon, Thomas F. Murphy, Hiram Shay and William Mulhall. The overseer, in his affidavit, swears that the statement of the plaintiff's witnesses in relation to the point in issue " is untrue, to this deponent's knowledge; that no part of said rail road, either above or below the chemical works, was taken up by this deponent, or by any one in the employ of said Hiler, (the defendant,) in the charge of this deponent, by deponent's direction;" and then, after speaking of some other matters, concludes by saying, "that when this deponent was examined as a witness on the trial of said action, no questions were put to him tending to elicit from him testimony of the facts above stated, or this deponent would have testified to what is contained in the foregoing affidavit." This witness certainly has for some cause felt himself justified to swear more strongly in making his affidavit than he did on the trial, und some cause has doubtless had an influence " to elicit from him testimony" tending, if possible, to give additional weight to what he had previously testified; but the evidence was strictly cumulative as bearing on the main fact, and it is difficult to discover why, when testifying in relation to the same subject matter on the trial, he did not speak as positively then as he was afterwards enabled to do. The reason assigned is by no means satisfactory.

Peck *v.* Hiler.

John Cordon, after stating that he was in the employment of the defendant from May 1, 1852, to January, 1854, and worked with Remer on the railway at the red bank spoken of by one of the plaintiff's witnesses, and also below the chemical works, says, "that during that time none of the rails connected with the said railway, or forming part thereof, were removed or taken up by this deponent, or by any other person in the employ of the defendant;" but immediately adds, "*that during the summer of* 1852 *deponent discontinued working at the said railway, and commenced working in the mill of the defendant;*" and he then says, "that he occasionally traveled along said railway, and that said railway was in the same condition as it was in May, 1852, until some time in the spring of 1853."

This, while it shows that he was during a portion of the year 1852 employed at the localities referred to by the plaintiff's witnesses, it fails to show that he was so employed at the times designated by them ; on the contrary, it appears clearly from his statement that he was not so employed on the last occasions specified, and the fair conclusion is also that he was not at the first.

Thomas F. Murphy speaks of being employed as a carman under Remer, in carting machinery and sand in the neighborhood of the railway, in the months of April, May and June, 1852 ; that such work was completed in the month of June, and that all the men engaged therein under Remer, together with Remer himself, withdrew therefrom as early as June, 1852 ; and he adds, that when the men left, no rails had been taken up or removed. Hiram Shay swears to the same facts substantially, and to the additional fact, that after the completion of the job he examined the railway both above and below the chemical works, and no portion thereof had up to that time been removed or taken up. William Mulhall swears that he worked under Remer, in the employ of the defendant, from 1st May, 1852, to about the middle of December in the same year ; that "during a portion of said time he was work-

ing on the railway" assisting in taking machinery and other articles from the rail road to the mill; "that during that time none of said rails were removed or taken up by this deponent, or by any one in defendant's employ;" and that after he got through with the work on the railway, he went to the mill of the defendant to work. This, although showing that the witness was employed a part of the year on the railway, does not disclose what particular time or portion of the year.

It also appears by the affidavit of Shay, that there were many others employed upon the same work with him, and yet the affidavits of the other persons employed are not produced by the defendant.

If therefore it be conceded that the persons whose testimony is above in part given testify to the truth, and that the statements of the other parties are also true, yet their testimony is not of a different kind or character from that of Remer adduced on the trial. Its tendency and effect are merely to give additional weight to the facts sworn to by him, and to "reinforce the presumption" raised by his evidence, that the plaintiff's witnesses either were mistaken or swore falsely. It can therefore only be regarded as cumulative, and cannot be considered as establishing a new or distinct fact. It is consequently insufficient to warrant a new trial. (*The People* v. *The Superior Court,* 5 *Wend.* 127, *supra, S. C.* 10 *id.* 285 *and the cases cited. Gyot* v. *Butts,* 4 *id.* 579. *Fleming* v. *Hollenback,* 7 *Barb.* 271.)

These views are sufficient to dispose of the defendant's appeal. It may be proper, however, to add, that if we entertained a different opinion on the questions already considered, the motion was properly denied, on the ground that the application was too late after judgment entered. The decision in that respect was in accordance with the practice since the adoption of the code, as established by the general term in this district, in the case of *Harrison* v. *Lott* (not reported.) Such also was the well settled rule before the code, except so

---

far as it was modified by the act of 1832 relating to the supreme and circuit courts; (*chap.* 128 *of Laws of* 1832; *see Rapelye* v. *Prince,* 4 *Hill,* 119, 125;) but that act related to personal actions only. It therefore, even if still in force, could not be of any avail to the defendant in this action.

In any view of the case, the order made at special term was right, and must be affirmed with $10 costs.

