“ Freedman, J.
Upon affidavits and all the papers and proceedings in the first entitled action, and the summons and complaint and certain affidavits entitled in the second action, and upon a case settled and printed in the first entitled action, Henry and Martin Schrenkeisen now move at special term : 1. That the judgment in the first *221 entitled action, though affirmed by the general term, be vacated and set aside, and that the case be referred back to the special term for re-trial; 2. That all proceedings on the part of Peter Bom in the first entitled action be stayed until after the trial of the second action; and, 3„ That they have such other and further relief as may be just and equitable.
“ At the same time, Peter Born, besides opposing the motions by counter-affidavits, demurs to the complaint in the second action upon the ground that it appears upon the face of the.complaint, 1. That there is another action pending between the same parties for the same cause; and, 2. That the complaint does not state facts sufficient to constitute a cause of action.
“ The most material facts, briefly stated, are as follows : In 1816, Peter Born obtained a patent for an improvement in folding chairs, and thereafter Henry and Martin Schrenkeisen agreed with him to take an assignment of his patent, to try to introduce the chair, to pay him a royalty of 75 cents on each chair made and sold, to give him a license to make and sell the chair at his own store in the city of New York, and to refrain on their part from selling in the city of New York or the city of Brooklyn so long as he made use of the license. This agreement was perfectly expressed in the assignment. The license, with two papers, were carefully prepared under the direction of Henry and Martin Schrenkeisen. When, however, the parties came together to execute the papers, Born wanted something different, namely a royalty on 600 chairs a year, irrespective of the number actually manufactured and sold, in addition to the $1,200 agreed upon for the assignment of the patent. According to the claim of Martin and Henry Schrenkeisen, it was then said in their behalf, that, if they hi the course of their extensive business as manufacturers of furniture could not sell 600 of the chairs in a year, they preferred to sell none at all, and that consequently they would agree to the proposed modification, if Born would agree *222 that if they should not be able to sell that number a year, the whole arrangement between them should be null and void. These were not the precise words, but the substance of what was said, and Henry and Martin Schrenkeisen claim, though Born denies it, that the latter agreed to that. It is beyond controversy, however, that some modification was then and there agreed upon, and that, whatever it was, Martin Schrenkeisen undertook to make a memorandum of it, and that he did so on the spot, and without legal advice. The modification should have been inserted as a proviso in the assignment, but Martin Schrenkeisen, who is a German, and not thorougly master of the idioms of the English language, put it upon the back of Born’s license and in the following words, viz.: 1 We agree to number the chairs in rotation, pay royalty every month if desired, and show our sales books for the number sold. We further agree to pay royalty on not less than 600 chairs a year, and should we fail in this the agreement shall be null and void. Signed by M. & H. Schrenkeisen, by M. Schrenkeisen.’
“After this, as further claimed by the Schrenkeisens, a considerable sum of money was spent by them in the effort to successfully introduce the chair, but the chair did not work well in use,- and would not sell. They could only sell 209 chairs, and they paid to Born for royalties for the same $88.50 in February, 18!% and $86.25 on January 8, 18J8. Born was then told that that was the end of the matter ; that the invention was a failure, and that it was useless to proceed further. Born acquiesced, from that time until the year 1884 he made no further claim for royalties.
“The action first above entitled, was commenced in May, 1884. It was commenced to compel H. & M. Schrenkeisen to render an account to Born of the number of chairs manufactured and sold and to obtain a judgment for the amount due. The answer of H. & M. Schrenkeisen consisted of a general denial of the agreement, as set forth in the complaint, and a plea of failure of con *223 sideration. Upon the trial, all parol testimony which they sought to give to show the real character of the arrangement as claimed by them, was excluded, and it was held that the three writings, viz.: The assignment, the license and the memorandum on the back of the license, together constituted the contract between the parties, and that the contract, as thus appearing, was so clear that no parol evidence could be admitted to vary or modify it. It was further held that the words ‘null and void5 in the memorandum, should be construed to mean ‘ voidable at the option of Born/ and under this construction the trial finally resulted in a judgment in favor of Born for $4,401.92. From that judgment H. & M. Schrenkeisen appealed to the general term, where the judgment was affirmed. Thereupon they brought the second action above referred to, for the purpose of obtaining a reformation of the contract so that it should express the true intent and meaning of the parties, which, as claimed by them, were as above stated. To the complaint in this action, Born demurred upon the grounds stated.
“ Upon an examination of that complaint, which contains a great deal more than I have so far stated, I arrived at the conclusion that, upon its face, it does set forth a sufficient cause of action for a reformation of the contract, so far as the objections specifically urged against it are concerned, and' that the objection of the pendency of another action for the same cause, is not tenable because the causes of actions are not the same. If, therefore, I were to pass upon the sufficiency of the demurrer alone, H. & M. Schrenkeisen should have judgment upon the demurrer, with leave to Born to answer.
“But the action, to the complaint of which the said demurrer was interposed, is itself only one of several measures adopted by H. & M. Schrenkeisen to obtain the same end, namely, relief against the alleged unjust judgment in the first entitled action, and this makes it necessary that the relations between the two actions should be *224 still further and more accurately determined. When that is attempted, it appears at once that, although the complaint in the second action is not demurrable upon either of the grounds specifically assigned, H. & M. Schrenkeisen may in the end be defeated in the action brought by them by proof that the contract sought to be reformed was the subject of a former adjudication, by which a certain construction was conclusively established. In other words, the former adjudication as to what the contract was, standing unreversed and unvacated, may be invoked as a bar to a reformation.
“ Under these circumstances, it becomes apparent that, whatever relief can be extended to H. & M. Schrenkeisen, must be granted in the first entitled action. As to the power of the court to vacate the judgment and grant a new trial as a matter of favor and upon terms, there can be no doubt, since the decision of the court of appeals in Hatch v. Central National Bank (18 N. Y. 487). In that case an order was sustained which, after the payment and satisfaction of the judgment in favor of the plaintiff, vacated the judgment and allowed an amendment of the complaint by the addition of new causes of action, which otherwise would have been barred by the statute of limitation. It is a power inherent in the court and not limited in matters of substance by the provisions of the Code of Civil Procedure. Morever, section 124 of said Code is, of itself, quite sufficient for the purposes of the present case. The question, therefore, remains whether, upon all the facts presented, a case has been made out which calls for the exercise of the power.
“In the determination of that question it must be assumed that the issues raised by the pleadings in the first action, so far as they went, were correctly disposed of. It must also be borne in mind that ordinarily a defendant will not be permitted to experiment with his defenses. As a general rule, he must be held to his election. Change of counsel and the substitution of a new theory, are never of themselves sufficient.
*225 “ But H. & M. Schrenkeisen have shown, in addition to what has already been pointed out, that, when this action was commenced in May, 1884, no papers relating to it could be found, except a rough copy of the memorandum which had been indorsed on the license ; that they did not, at the time, remember the other papers; that owing to the lapse of time and Born’s acquiescence in the abandonment of the enterprise for about six years, they had forgotten the particulars of the original transaction; that from the scanty information they were able to give to their attorneys, the said attorneys believed that at the trial the real arrangement would have to be established by parol testimony; that the production, by Born’s counsel, of the assignment, the license and the memorandum was a surprise to them and to their attorneys ; that then there was no time left to study and ascertain the precise bearing of these three papers upon the case, nor the relation of the papers to each other ; and that even then their attorneys remained under the impression that parol testimony could be given to explain the papers, but that, when the attempt was made to give it, all parol testimony was excluded.
“Upon the whole case, I think it may be fairly held that, even if it could be said that H. & M. Schrenkeisen had no business to be surprised as stated, they still have made out a case of excusable neglect; and when to this is added the consideration that in all probability the parties did not in fact intend the contract to be as the court, upon unexplained proof, found it was, and that consequently the real merits were not tried, and that the judgment, unless vacated, would be a conclusive adjudication as to the true construction of the contract in all actions ' which may be brought from year to year during the life of the patent, a case is presented which calls for the exercise of the equitable powers of the court.
“In conclusion, acknowledgment should be made that Born denies many of the statements contained in the moving papers, and especially the principal statements relied *226 upon for a reformation of the contract, though he concedes that the memorandum is in the handwriting of Martin Schrenkeisen, and that it was made by the latter without legal assistance, and at the time and place as stated by the latter. But in my judgment Born’s denials are not sufficient to overcome the case of excusable neglect as made out by H. & M. Schrenkeisen, resting, as that does, largely upon his own inaction and acquiescence for six years ; and his denials of the matters relied upon as ground for reformation, create an issue which ought not to determined upon affidavits. As the case stands, there is a probability at least that H. & M. Schrenkeisen may succeed in establishing their version of the contract, and as the contract, when once fully determined, will govern in future litigations, they ought to have an opportunity to fairly litigate the question. I, for one, cannot believe, upon what now appears, that the parties, in point of fact, intended that Born only should have the option to declare the contract null and void. What H. & M. Schrenkeisen intended to provide against, was a failure of the enterprise, notwithstanding their most faithful efforts to insure success. In that event, they wanted to have the privilege of saying that they would go no farther. But under the construction adopted by this court, under the circumstances hereinbefore stated, Born only was to have that privilege, although, in case of a failure of the enterprise, notwithstanding the best endeavors of H. & M. Schrenkeisen, his interest would prevent him from ever claiming the privilege.
“ My final conclusion is, that the judgment in the first entitled action should be vacated and set aside, and a new trial granted, and that H. & M. Schrenkeisen should have leave to amend their answer in said action, as they may be advised ; but that this relief should be granted only upon the following conditions, viz.: 1. That they pay the costs of said action as taxed, inclusive of the allowance contained in said costs ; 2. That they discontinue the action brought by them for a reformation, and pay the costs *227 thereof to be taxed as if the demurrer to the complaint had been sustained; and, 3. That they pay ten dollars costs of motion.”
Wehle & Jordan, attorneys, and Henry Wehle, of counsel for appellant, on the questions considered in the opinion, argued:
I. The court had no jurisdiction to
make the order appealed from. The Code authorizes the court to relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect {Code, § 724). That this power is not unlimited, and that the court .cannot grant orders in the exercise of this power which are prohibited by other provisions of law, has been well established (McFarren v. St. John, 14 Hun, 387; Riggs v. Waydell, 17 Ib. 515 ; Werboloski v. Greenwich Ins. Co., 14 Abb. N. C. 98). From the very nature of this provision it follows that it can only be invoked in a case where no other relief has been invoked. The defendants could not, after having taken their appeal, after seeking the remedial power of the appellate tribunal, return to the special term and ask its interference (Fischer v. Corwin, 21 Week. Dig. 7). The case of Hatch v. Central National Bank (78 N. Y. 481), cited by the court below, is not in point. The judgment which was vacated in that case had not been appealed from. In Hubbard v. Copcutt (9 Abb. N. S. 290), the special term modified a judgment, after it had been affirmed at general term, by deducting an item from the recovery. The court of appeals held that the special term had no jurisdiction so to interfere with the judgment, although the appeal was dismissed on another ground. In McKelvey v. Lewis (44 Super. Ct. 561), which is cited by defendants’ counsel, the special term merely amended the judgment at the application of the successful respondent, so that the original adjudication could be executed completely, and this order was properly affirmed at general term. But of course this decision could not sanction the setting aside, the overriding, of a judgment of the general term.
*228 II. If the application had been made to the proper tribunal, it should have been denied, (a) Because the defendants had been guilty of gross laches, (b) The ground of their motion, as contained in their moving papers, amounts to this, that they were mistaken about the law. (c) If the order appealed from can stand, almost every judgment rendered at the special term, and every verdict recovered at the trial term could be set aside on similar grounds (Price v. Price, 83 Hun, 432).
III. The application should have been denied also on the ground that, to grant it, would be a premium upon feckless swearing.
IV. The application should have been denied on the ground of defendants’ gross negligence. Defendants should be taught that, after interposing an answer, amending it under the rules of the court, and amending it again by the favor of the court on the trial, and inviting the decision of the court upon that answer, and after seeing the judgment of the court and the grounds thereof, he will not be permitted to tempt fortune on another answer, when it plainly appears that by any reasonable care and circumspection he would have discovered the grounds upon which he now claims that that new answer could be interposed. The case of Price v. Price (supra), was a case much more meritorious than the defendants’ case. If the defendants had answered truthfully the complaint, they would have been bound to admit each and every fact set out in the complaint, and then they might have pleaded whatever claim he might have made upon a reformation of the contract. At that time, however, the defendants acted upon advice which held that plaintiff cannot recover on the contract as written. Under such advice, a reformation of the contract was not necessary. Defendants relied upon that advice ; but now, after seeing the judgment of the court, they have become wiser ; they retained other counsel, who gave different advice. It is not to be wondered at that defendants seek an opportunity to try the case again in order to profit *229 from the new Hght that has come to them. Every suitor who lost a cause has undoubtedly the same desire. But the policy of the law is immutably opposed to it.
V. The motion should have been denied on the further ground that the affidavits of both parties in respect to the contract do not show a cause for reforming the contract. Upon a motion of this character, the courts ought to exact at least a fair preponderance of evidence on the question as to whether the defendant is entitled to demand a reformation oft the contract. And' if the tests which have been established upon motions for a new trial on the grounds of newly discovered evidence, are to be applied to a motion of this character, then the motion must have failed, because there is no such preponderance in favor of defendants’ claim (People v. Super. Ct., 10 Wend. 285 ; Peck v. Holer, 30 Barb. 655 ; Sheldon v. Stryker, 27 How. 387).
VI. The motion should have been denied, even if the court had concluded that the agreement was made as claimed by defendants.
VII. The terms upon which this judgment was set aside, assuming that the court below had jurisdiction to vacate it upon any terms, were inadequate. The defendants should have been required to pay at least all the royalties which were earned up to the date of the order. As the defendants cannot have the patent and withhold the royalties, they should be compelled to pay royalties up to the time of returning the patent (Marston v. Swett, 66 N. Y. 207 ; Hilton v. Libby, 44 Super. Ct. 12).
Porter & Kilvert, attorneys, and W. W. MacFarland, of counsel for respondents, on the questions considered in the opinion, argued:
I. The court had power to make the order vacating the judgment. This proposition is too well settled to admit of discussion ; nor does the learned opinion at special term leave anything further to be said on this point (Hatch v. Cent. Nat. Bank, 78 N. Y. 487 ; Code, § 724). In England, the courts have always exer *230 cised this power as part of their inherent authority (Cannon v. Reynolds, 5 El. & Bl. 301; Delafield v. Tanner, 1 Marsh. 391; 5 Taunt. 856 ; Evans v. Grill, 1 B. & P. 52 ; Waters v. Waters, 2 De Gex & 8. 591 ; Lancaster Bk’g Co. v. Cooper, 9 Ch. D. 594).
II. It was a proper exercise of discretion. The merits of the case had not been fairly investigated, nor at all (Waters v. Waters, 2 De Gex & S. 591). The miscarriage of the case on defendants’ part, was due to the antiquity of an affair begun, ended and forgotten years before, and the loss of the papers relating to it, and all memory of details ; hence the attorneys were not and could not be properly instructed. The answer failed to present the defense. The judge obtained no accurate knowledge of the case. The result was, that the case was not properly developed, presented or tried, though without its being possible to say with justice, that any particular fault attached to any one. It was simply one of those miscarriages that will sometimes happen, and when they do, ought to be put right.
III. That the real intention of the parties was as defendants claim, admits of no doubt, and is, indeed, made quite conclusive by the following considerations : 1. In the first place it is incredible that men of long and extensive business experience like the defendants, should agree, off-hand, and unconditionally, to pay the plaintiff an annuity of $450 a year, for the whole life of such a patent, just issued, untried and without any knowledge as to its validity or value. 2. The proofs now presented make it entirely clear that the plaintiff himself never so understood the arrangement. He made a final settlement in respect of royalty in January, 1878, being then told that as the chair was a failure the defendants would make no more. He received what was due to him at the rate of 75 cents for each chair made and sold, and was content, and remained so for over six years after that payment, and would never have dreamed of any other construction if some attorney had not put the idea into his head.
*231 IV. The motion papers present a case entirely free from negligence or any fault on the part of the defendants Or their attorneys, if fair allowance be made for the difficulties under which they labored in the preparation and trial of the case.
Per Curiam.
The opinion of the learned judge below, shows that justice required that the defendants should have the relief that was granted by the order appealed from. It is best, however, that certain modifications be made, which will obviate certain consequences, generally relied upon as the ground of denying applications for new trials. The order should be modified so as to prevent a re-trial of the old issues. This will be accomplished by permitting the defendants to amend the old answer by setting up in the amended answer only the defense which was made the ground of the application below. This defense relates to the right of the defendant to have the contract that was written reformed, so as to express the actual intention of the parties, as to what it should contain. The leave to amend should be as exact as possible as to the contemplated amendment, and the time within which it is to be served should be specified. The order will be settled upon notice.
The order below, modified as suggested, is affirmed, without costs to either party.