derstand it to charge that the plaintiff had not only been guilty of some act of moral turpitude in connection with her attorney, but that she had also been made defendant in an action brought by her husband for divorce on statutory grounds.

The defendant is not aided by the omission to state in its publication that a divorce action was brought against this plaintiff, or that the action was brought in this state. The plaintiff alleges in her complaint that at the time of the publication she was the lawful wife of Gyula De Festetics, and necessarily the article could refer to no one but the plaintiff. The publication was in New York, was made by the defendant in a New York paper, of the plaintiff, from her birth a resident of New York, which state was also the marriage domicile, was read by residents of New York, and must have conveyed to the average reader thereof the impression that the plaintiff had been sued for divorce in this state on the ground of adultery. Therefore the article must be held to be libelous per se. Rivers v. N. Y. Eve. Journal Pub. Co., 120 App. Div. 574, 104 N. Y. Supp. 1081.

The demurrer will be overruled, with leave to defendant to plead over upon payment of costs within 20 days.

Demurrer overruled, with leave to defendant to plead over upon payment of costs within 20 days.

---

### BROOKLYN HEIGHTS R. CO. v. BROOKLYN CITY R. CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. RAILROADS—LEASES—CONSTRUCTION.

A railroad lease provided that the lessee could sell any real estate not necessary for the use of the railroad, and that the lessor should expend the proceeds for such additions, improvements, etc., to the railroads and properties belonging to it as in the judgment of the parties should be necessary or advantageous to lessor's property or to the lessee's interest other than those necessary to keep the property in good condition, and other than those necessary to preserve or secure efficiency in the operation of the railroads. Held, that the exception to the employment of the proceeds of the sale of unused real estate for additions and improvements referred to additions and improvements relating to the operation of the company as a railroad rather than to the administration of its corporate affairs as a business, and hence where the lessee had with the lessor's consent superintended the erection of an office building for the railroad, and had advanced money to help pay for it, the lessee was entitled to be reimbursed from proceeds of the sale of unused real estate in the lessor's hands.

2. SAME—"KEEPING UP THE ORGANIZATION."

A railroad lease provided that the lessee would, during the term of the lease, pay all reasonable expense necessary to keep up the organization of the lessor. Held, that the parties by the phrase "keeping up the organization" meant the payment of the lessor's current expenses as a living corporation.

3. SAME—"NECESSARY AND REASONABLE EXPENSE."

A railroad lease provided that the lessee would, during the term of the lease, pay all reasonable expenses necessary to keep up the lessor's organization. The lessor was not engaged in any business; it had parted with the control of all its property, but it still had to hold its annual meeting of

stockholders, elect its directors, choose its officers, file its annual report, receive the rent from the lessee, and, if it determined to do so, distribute dividends. The meetings of the directors and executive committee were principally occupied in considering questions of disputes between the lessor and lessee over the construction of the lease. *Held*, that a salary of $3,600 a year to the president, $500 to the vice president, who renders no service except when the president is absent in the summer time, $2,000 per year to a secretary and treasurer, the calling of frequent meetings of the directors and executive committee at an expense of from $50 to $80 a meeting, and the maintenance of stock transfer clerks and stenographers at an expense of $1,300 per year when the stock transfers did not average more than two a day, were not necessary and reasonable expenses, within the lease.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, p. 4711.]

4. SAME.

A railroad lease provided that the lessee should pay the reasonable expenses necessary to keep up the lessor's organization, and should pay the expense of any action thereafter brought against the lessor and any judgment rendered therein. The provision of the lease as to amounts to be paid to keep up the lessor's organization being in dispute, the matter was left to arbitration, which was without result. *Held*, that the lessee was not liable for the expense of the arbitration, since it was not an expense of keeping up the lessor's organization, nor was it an action brought against the lessor within the meaning of the lease, the provision embracing only actions brought by others than the lessee.

5. SAME—ACTIONS—BURDEN OF PROOF.

Where a lessor railroad company seeks to recover from the lessee company under a provision in the lease binding the lessee to pay all reasonable expense necessary to keep up the lessor's organization, the burden of proof is upon the lessor to prove that the claim sought to be recovered is a reasonable expense.

6. SAME—LEASES—CONSTRUCTION—EXPENSES NECESSARY TO KEEP UP LESSOR'S ORGANIZATION.

Where it was not intended either by the client or by the counsel at the time legal services were rendered for a lessor railroad company that they should be paid for, compensation therefor is not a reasonable expense of the lessor company's organization within a lease binding the lessee company to pay the reasonable expenses necessary to keep up the lessor company's organization.

7. SAME.

Where the lessor brought suit against the lessee to recover for expenses of maintaining the lessor's organization under a clause of a railroad lease binding the lessee to pay the reasonable expenses of the lessor's organization and the lessee settled the case by paying the whole claim, the counsel fee in the case was a reasonable expense of the lessor's organization for which the lessee was liable.

8. SAME—ACTIONS BROUGHT AGAINST LESSOR—LIABILITY OF LESSEE FOR EXPENSES.

Four actions were brought against a lessor railroad company; two of which were to restrain acts on the part of the company which it did not intend to perform and were abandoned before trial. The other two, one of which was not tried, were brought to set aside the lease, and the lessor's attorney was assisted by competent counsel representing the lessor as well as the lessee, and the active work of the trial and argument of the appeals devolved on counsel other than the lessor's attorney. *Held*, that the lessor's attorney was reasonably entitled to $12,000 for his services, for which the lessee was liable under a provision of the lease that it should pay the expense of any action brought against the lessor.

**9. SAME.**

Under a provision of a railroad lease that the lessee should bear the expense of any action brought against the lessor, it was liable for $1,500 counsel fee in a suit against the lessor company to recover $15,000 in connection with a real estate transaction had prior to the lease.

**10. SAME—DEFENSE OF TITLE BY LESSOR—LIABILITY OF LESSEE FOR EXPENSES.**

Where, in a railroad lease, the lessor covenanted that the lessee should peaceably and quietly enjoy the demised property without hindrance from any person claiming through the lessor, the lessee is not liable for the expense of counsel employed by the lessor to defend the title to the demised property in an ejectment suit brought by the holder of an alleged tax title, under a provision of the lease binding the lessee to indemnify the lessor against the expense of any action brought against the latter.

**11. SAME.**

Where the lessor in a railroad lease covenanted that the lessee should peaceably and quietly enjoy the demised property without hindrance from any person claiming through the lessor, a clause therein releasing the lessor from any claim for damages by reason of any defect in title of the property demised should not be extended to include expenses of protecting the title, since that would nullify the covenant for quiet enjoyment.

**12. EVIDENCE—OPINION EVIDENCE—CONCLUSIVENESS—VALUE OF LEGAL SERVICES.**

Testimony as to the reasonableness of an attorney's charge for legal services is not testimony as to a fact, but is in the nature of opinion evidence, and is not conclusive, especially where the witness is interested.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2392.]

Appeal from Special Term, Kings County.

Action by the Brooklyn Heights Railroad Company against the Brooklyn City Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed on the opinion of the court below.

See 105 App. Div. 88, 93 N. Y. Supp. 849.

The opinion of the court below was as follows:

BURR, J. By an instrument dated on the 14th day of February, 1893, the defendant leased to the plaintiff the railroads owned, constructed, or operated by it, and also all real estate owned by it, situate in either of the counties of Kings or Queens. By this instrument it was among other things provided that if the continued use of any real estate included in or covered by the terms of said lease should not be necessary or required for the maintenance or operation of said railroads, their extensions or branches, then the defendant with the consent in writing of the plaintiff might sell and dispose of the same. (Paragraph 45.)

It is conceded that the defendant with the consent of the plaintiff has disposed of a considerable portion of such real estate, and now has in its possession a sum in excess of $78,000 as the proceeds thereof. By the terms of the said lease it was further agreed that the proceeds of such sales should be expended by the defendant in payment of the cost of such additions, improvements, extensions, branches, and equipments to the said railroads and properties belonging to it as in its judgment and in that of the plaintiff should be necessary or advantageous to the property of the defendant, or for the interest of the plaintiff other than those necessary to keep the said railroads and properties in good condition and repair and "other than those necessary to preserve or secure efficiency in the operation of said railroad or railroads." (Paragraphs 45 and 5.)

Prior to the commencement of this action, the plaintiff and the defendant agreed that it was advantageous to the property of the defendant and for the interest of the plaintiff that the defendant should purchase a lot at the corner of Clinton and Remsen streets in the borough of Brooklyn, and that there should be erected thereon and upon the lot immediately adjoining, which then belonged to the defendant, an office building as an addition to the property of

the defendant. Such a building has been constructed under the supervision and direction of the plaintiff upon plans submitted to and approved by the defendant. The defendant has paid a sum in excess of $50,000 to purchase said lot. It has also paid the plaintiff the sum of $21,840 toward the cost of the construction of said building. The plaintiff prior to the 13th day of May, 1905, had expended in the erection of said building in addition to the sum received from the defendant the sum of $77,728.76. The plaintiff has demanded that the defendant pay to it such sum out of the funds now in its hands resulting from the sales of other real property. This demand has been refused and this action is brought to recover such sum.

That the plaintiff is entitled to recover this amount is clear. In one sense it may be said that the erection of an office building conveniently arranged and well equipped is an improvement which tends to "secure efficiency in the operation of said railroad," but that it was not the intention of the parties to the instrument to give such construction to the language of the lease is apparent not only from the context, but from the use of identically the same or very similar words in other clauses of the contract. (Paragraphs 4, 10, and 21.) The exception to the employment of the proceeds of the sale of unused real estate for additions and improvements manifestly refers to additions and improvements relating to the operation of the company as a railroad rather than to the administration of its corporate affairs as a business in which its stockholders are interested. To give to the exception the construction contended for by the defendant would make the exception as broad as the preceding clause, and virtually nullify its entire meaning. The practical construction given to it by the parties confirms this view.

The more serious difficulties in this case arise out of a counterclaim interposed by the defendant. By the terms of the lease above referred to, the plaintiff agreed during the term of the lease "to pay all reasonable expense necessary to keep up the organization of the lessor (the defendant) and to furnish suitable offices free of rent including heat and light." (Paragraph 16.) The defendant claims between the 31st of August, 1904, and the 1st day of June, 1905, to have paid sums which under the clause of the lease are properly chargeable to the plaintiff amounting to $30,648.43. The said lease further provides that the lessee, the plaintiff, should hold, save, keep harmless, and indemnify the lessor, the defendant, "from and against the expenses of the defense of any and all actions involving the validity of the said lease * * * or the title of the lessor to any real estate, * * * also from and against the expense of any action * * * then pending or which may be thereafter brought against the lessor and against any judgment rendered in any of said actions." (Paragraph 34.) The defendant further claims to have expended $19,038.04 in the defense of various actions included within the terms of the agreement as above set forth. The defendant asks that these sums be allowed as a counterclaim against any sum due to the plaintiff.

The first question for determination is whether the whole or if not the whole what part of the sum of $30,640.43 was expended in keeping up the organization of the defendant. The second question is whether these expenditures were reasonable in amount. I think that it was the intention of the parties to the lease that not only the interest on the bonded indebtedness of the defendant should be paid by the plaintiff, but that a fixed sum in addition should be paid as rental which (if no deductions were made therefrom) would yield to the stockholders of the lessor company dividends at the rate of 10 per cent. per annum. To avoid making such deductions it was necessary that the current expenses of the defendant as a living corporation should be paid by the plaintiff. I think that was what was intended by the phrase "keeping up the organization." Were these expenses necessary and reasonable?

It appears that during the nine months specified in defendant's counterclaim, the defendant has expended the sum of $5,215 for salaries, the sum of of $1,730 in fees for directors' meetings and meetings of the executive committee, and more than $1,500 for sundry disbursements. At the same rate the expenses of the entire year would be in excess of $11,000. In determining whether these are necessary and reasonable, it is important to consider what duties must be discharged by defendant company to maintain its organization. It was not engaged in any business. It had parted with the possession and con-

trol of all its property. It still had, however, certain duties to perform. It must hold its annual meeting of stockholders; it must elect its directors; it must choose its officers; it must file its annual report; it must receive the rent from the plaintiff, the lessee, and if it determined so to do, distribute dividends to its stockholders. Beyond that, the evidence wholly fails to disclose that during the period in question anything else was necessarily done either in keeping up the organization of the defendant or administering its affairs. Considerable evidence was given that at a time long previous to the period in question something more was required to be done in the way of administering the affairs of the defendant company, but, even then, I think the manifest purpose of the witnesses was to greatly exaggerate the amount and importance of the business transacted. Be that as it may, during the period in question no real estate was disposed of by the lessor company, and the meetings of directors and executive committee were principally engaged in considering questions of disputes between this defendant company and the plaintiff, growing out of the construction of the lease. Substantially nothing else was done. The interest on the bonded debt of defendant is paid by the plaintiff directly to the trustee for the bondholders, and the canceled coupons are returned to the defendant. It has no labor to perform in this regard. Under such circumstances it seems to me wholly unnecessary and unreasonable to pay to the president a salary of $3,600 a year; to the vice president (who renders no service whatever except when the president is absent from the country in the summer time) the sum of $500; to pay a secretary and treasurer $2,000 a year; to call frequent meetings of the directors and executive committee at an expense of from $50 to $80 a meeting; and to maintain stock transfer clerks and stenographers at an expense of $1,300 a year, when the entire stock transfers do not average much more than two a day. It is undisputed that this entire service of receiving the rent and distributing dividends would be done by several responsible trust companies for a sum not to exceed $1,000 a year.

The conclusion is irresistible to my mind that if the directors of the defendant were obliged to pay the expense of keeping up the organization and of administering its affairs out of its own treasury, instead of out of the treasury of the plaintiff in this action, the expense would be very largely reduced. I think that the sum of $4,500 would be a most ample allowance to cover the expense properly chargeable to the plaintiff by the defendant under the terms of the said lease for the period of nine months covered by its counterclaim. This would be at the rate of $6,000 a year.

Included in the said sum of $30,648.43 above referred to is a further sum of $250 for services of one J. MacL. Nash as arbitrator. It appears from the evidence in this case that for several years the amount to be charged and allowed to the defendant and paid by the plaintiff under the clause of the lease above referred to has been disputed. On one occasion it was proposed to leave the matter to arbitration, and Mr. Nash was selected as arbitrator by the defendant. The arbitration proceedings fell through, and no result was reached. It would certainly be doing violence to the ordinary use of language to hold that this was an expense of keeping up the organization of the defendant. But if otherwise, it would be unreasonable to require the plaintiff to pay an expense incurred by the defendant in asserting a claim against the plaintiff which it did not succeed in maintaining. Although the lease provides that the plaintiff shall pay the expense of any action thereafter brought against the lessor, and also any judgment rendered in any such action, this manifestly refers to actions brought by persons other than the lessee and judgments rendered in actions other than those specified. The lessor would not be permitted to take advantage of its own wrong, and by refusing to pay a sum justly due to the lessee compel the lessee to sue for the same, and then when it had recovered judgment against the lessor call upon the successful party in such litigation to itself pay the judgment which it had recovered against the wrongdoer.

Another item included in the sum for general expenses above referred to is the sum of $19,000 paid in November, 1904, to William C. Trull. This it was claimed was paid to him for his general services as counsel to the defendant company during the period of 9½ years immediately preceding such payment being at the rate of $2,000 a year. There was an additional sum claimed to have been

paid Mr. Trull for disbursements amounting to $1,858.19. With regard to this it is sufficient to say that there is not the slightest evidence from which the court can determine when these disbursements were made, the items comprised in the amount, or the purpose of them. The burden of proof was on the defendant to show that these were reasonable. There is no evidence from which the court can reach any conclusion upon that point.

With regard to the item of $19,000 paid for counsel fees, I think it is entirely clear from the evidence in the case that it was not the intention at the time the services were rendered either on the part of the counsel to make a charge or on the part of the defendant to pay for such services. It was admitted by Mr. Trull that there was never any contract or agreement respecting the same, and the conduct of the parties clearly indicates that such services as were rendered were rendered in a general way without intending to charge for the same, the purpose being, as is frequently the case, in respect to services rendered by counsel to corporations to charge in specific cases a sum sufficient to cover any general services that might be rendered. If this is so, this was not a necessary expense of the defendant. It is not necessary to determine whether such charge would have been reasonable in amount, although I may say in this connection that the evidence wholly fails to satisfy me that during at least the latter part of the period claimed any services were rendered outside of services in specific litigations which would justify any such claim. Some evidence was given of frequent and apparently serious consultations about a proposed change in the "Guaranty Fund" referred to in the lease. No legal advice was necessary. This fund could not be changed without the consent of the defendant. It could refuse to consent as it did. That was the end of it.

The remaining item going to make up the charge for general expenses of keeping up the organization is the sum of $1,200 paid to Mr. Trull for his fees in connection with a suit brought in February, 1900, by the Brooklyn City Railroad, the defendant here, against the Brooklyn Heights Railroad, the plaintiff here, to recover the sum of $10,364.77, at that time claimed to be due for expenses of maintaining the organization of the defendant company under the clause above referred to. After some litigation, that suit was settled by the payment in full of the amount claimed. Whatever the motives may have been which induced the lessee company to make such payment the legal effect of it was a concession that they were in the wrong in the matter and that the suit was properly brought. Under such circumstances, I am disposed to allow the sum of $1,200 claimed to have been paid to Mr. Trull for services in that case as properly paid. Under this branch of the counterclaim, therefore, I allow to the defendant the sum of $5,700.

The defendant further sets up as a counterclaim, and demands to receive, the sum of $16,800 paid as a counsel fee, and $518.88 paid as disbursements to Mr. Trull for services in four suits brought by one Patrick H. Flynn against both the plaintiff and the defendant in this action. Also, the further sum of $1,500 paid as counsel fee and $69.16 paid as disbursements to Mr. Trull in the defense of an action brought by the Railroad Construction Company against the Brooklyn City Railroad to recover the sum of $15,000 claimed to be due to it in connection with a real estate transaction had long prior to the lease in question. Also, the further sum of $150 paid to Mr. Trull for services in connection with an action brought by one Prendergast, upon a tax title affecting certain property owned by the defendant and leased to the plaintiff. That the defendants are entitled to be paid by the plaintiff such sum as was reasonably and fairly paid to their counsel for services in the Flynn cases does not admit of a doubt. There were four of these actions. The complaint in the first action which was brought to set aside the lease was dismissed in the court below, and this decision sustained in the Court of Appeals. The decision rested upon the failure of the plaintiff to make a demand upon the lessor company to bring such action before he brought the same. After the decision of the Appellate Division in that case a demand was made, and then action No. 4 was brought. Action No. 4, however, was never tried, but was subsequently abandoned. Actions 2 and 3 were brought to restrain action upon the part of the lessor company with regard to the distributing of its surplus, and the change of the securities constituting a fund known as its "Guaranty Fund." These actions were never tried, but were abandoned, and, as Mr. Trull testified,

were not deemed of great importance, because the things which Mr. Flynn sought to enjoin the company from doing were things which it did not contemplate doing, and did not wish to do. The question is whether the sums charged are under the circumstances reasonable. If the defendant had through its counsel, Mr. Trull, borne the entire brunt of the litigation respecting the lease, I should not think the sum charged was an unreasonable one. But it clearly appears from the evidence in this case that associated with Mr. Trull were other distinguished counsel representing the Brooklyn City Railroad Company, and also distinguished counsel, four in number, representing the Brooklyn Heights Railroad Company, who were equally concerned with the Brooklyn City Railroad Company in sustaining the lease. It also appears from Mr. Trull's testimony that the active work of the trial, and the argument of the appeals, devolved upon other counsel and not upon him. The plaintiff intimated upon the trial of this action that it would be disposed to allow the sum of $10,000 in addition to $2,000 already paid to Mr. Trull for his services in the Flynn cases, making $12,000 in all. I think under the circumstances that this would be full and adequate compensation, and I therefore allow that sum.

I think that the counsel fee in the suit of the Railroad Construction Company should be allowed. This suit did not affect the title of any of the demised property but grew out of a former sale by the defendant. In the absence of evidence as to the disbursements they cannot be allowed.

I do not see how the claim for services in the ejectment suit brought by the holder of an alleged tax title can be collected from the plaintiff here. This action related to real property demised by the defendant to the plaintiff. Under the lease, the defendant covenanted and agreed that the plaintiff should peaceably and quietly enjoy the real estate and property demised without let or hindrance from "any person or corporation whatsoever claiming through the lessor." (Paragraph 2.) When this clause is read in connection with the clause (paragraph 34) indemnifying the lessor against the expense of any action brought, or judgment rendered in such actions, it became apparent that there is an exception to the general agreement where the bringing of such an action and the recovery of a judgment therein would interfere with the quiet possession of the lessee, and make the lessor liable on its covenants. So, too, I think that the clause releasing the defendant from any claim for damages by reason of any defect in title of the property demised (paragraph 44) should not be extended to include expenses of protecting such title. To so hold would nullify the covenant for quiet enjoyment altogether.

It was strenuously urged at the trial of this case and in the briefs submitted by the defendant that the reasonableness of Mr. Trull's charge for services could not be questioned, because his testimony that such charges were fair and reasonable was not contradicted by the testimony of any other witness. I do not think this position tenable, for two reasons: First, his testimony as to the value of his services was not testimony as to a fact, but was in the nature of opinion evidence. In such case even the testimony of a disinterested witness is not conclusive. Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028. But, second, Mr. Trull was not only not testifying to a fact, but he was an interested witness. Kavanagh v. Wilson, 70 N. Y. 177. The intimation in that case that the interest of a witness in the result of a litigation required his testimony to be submitted to a jury, even though there were no discrediting circumstances, was subsequently asserted. Gildersleeve v. Landon, 73 N. Y. 609; Brooklyn Crosstown Railroad Company v. Strong, 75 N. Y. 591; Wohlfahrt v. Beckert, 92 N. Y. 498, 44 Am. Rep. 406. Even if this clear rule has been modified so that now it is only necessary that the jury should pass upon the testimony "if the interest of the witness furnishes a proper ground for hesitating to accept his statements" (Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102), still the rule remains that testimony of this character is not testimony as to a fact, and therefore is not conclusive. The headnote in the case of Second National Bank v. Weston, 172 N. Y. 250, 64 N. E. 949, is not justified by the language of the opinion. In Littlefield v. Lawrence, 83 App. Div. 327, 82 N. Y. Supp. 25, the court did not dissent from the rule that such testimony was properly submitted to the jury, but set aside the verdict as against the weight of the evidence.

I conclude therefore, from the whole case, that the plaintiff is entitled to recover from the defendant the sum of $77,728.76 with interest from May 13, 1905, less $5,700 with interest from June 10, 1905, allowed to the defendant on its counterclaim for expense of maintaining its organization, $12,000 with interest from November 10, 1904, allowed to it for expenses of the Flynn actions, and $1,500 counsel fees in the action of the Railroad Construction Company.

The plaintiff should recover its costs and an allowance of $1,500.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and GAYNOR, JJ.

William C. De Witt, for appellant.

Edward W. Hatch, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Burr at Special Term.