[October Term, 1924]

## HILLSDALE STATE BANK v. JAMES A. CHRISTENSEN

(No. 1121; October 7, 1924; 229 Pac. 105)

Sales — Frauds — Negotiable Instruments — Attorney's Fees— New Trial.

1. In action by bank on note executed by defendants for advances, in connection with purchase of cattle, evidence as to concealment of fact that president of bank was part owner of cattle, and as to value of the cattle, *held* insufficient to establish fraud, in view of rule that fraud must be established by clear and convincing evidence.

2. Where note sued on provided for reasonable attorney's fees, even though witnesses agreed as to the reasonable value of attorney's services, it was nevertheless a question for the jury, under rule that jury has right to pass on credibility of expert and opinion evidence.

3. If amount awarded by jury as attorney's fees, under note providing therefor, is excessive, it may be reduced; and if so small that justice has not been done, court may grant new trial.

NOTE—See Headnotes (1) 35 Cyc. p. 84; (2) 8 C. J. p. 1061; (3) 29 Cyc. pp. 847, 1020.

Appeal from District Court, Laramie County; William A. Riner, Judge.

Action by the Hillsdale State Bank against James C. Christensen and others. From a judgment for plaintiff, defendants W. W. Hale and wife appeal.

*Kinkead* and *Henderson* for appellants.

The question of attorney's fees should have been submitted to the jury, 6 C. J. 764; Cotesworth P. Head v. Hargrave, 105 U. S. 1028, 26 L. ed. 51; Childs v. Littlefield, 91 N. E. 1017; the credibility of witnesses is for the jury, Boswell v. Bank, 16 Wyo. 161; C. B. & Q. Ry. Co. v. Pollock, 16 Wyo. 338; White v. Collins, 95 N. W. 765; Siebe v. Machine Works, 77 N. E. 300; Brown v. Reed, 41 Ga. 604; Sternaman v. Co. (N. Y.) 73 N. E. 113; Dinan v. Council, 60 Atl. 10. The court erred in directing a verdict when there was evidence tending to prove plaintiff's case on an issue of fact, Mau v. Stoner, 10 Wyo. 125; Nelson v. Johnson, 23 Wyo. 319; Chinn v. Co., 75 S. W. 375; Allen v. Am. Co. (Neb.) 106 N. W. 469; A. T. & S. F. Ry. Co. v. Lamoreaux (Kan.) 49 Pac. 152; Greenleaf v. Co., 33 Ia. 608; Louisville Co. v. Hall, 94 S. W. 26; Todd v. Co., 51 Atl. 332; Carter v. Fulgham, 32 So. 684. The question of fraud was one for the jury, Kerr v. Shurtleff, 105 N. E. 870; Gurney v. Tenney, 84 N. E. 428; Adam v. Steinbrecher, 133 N. W. 474; Fry v. Co., 69 Atl. 56; Metal Co. v. R. R. Co., 59 S. E. 50; Stringfellow v. Brazelton, 142 S. W. 937; Elliott Evi. Vol. 4 p. 202; Bank v. Cook, 183 N. W. 137; Bank v. Moomaw, 184 N. W. 51. The bank was bound by the acts of its officers having retained the benefit thereof, Lee v. Bank, 144 N. W. 630; Williams v. Hasshagen, 137 Pac. 9; Porter v. Bank, 120 N. W. 633; Citizens Bank v. Thornton, 174 Fed. 752; Bank v. Bank, 187 N. W. 623; Fletcher on Corps. Vol. 3, pp. 2284, 3100, 3108; 10 Cyc. 1064; 7 C. J. 559. The burden of fraud was upon plaintiff and it should have produced its books, Stirling v. Wagner, 4 Wyo. 5-42.

*Ray E. Lee* for respondent.

Assignments one to fifteen inclusive were insufficient to present any question for review, Boburg v. Prahl, 3 Wyo. 325; C. B. & Q. Ry. Co. v. Morrison, 16 Wyo. 308; Walbol v. Steinhoff, 25 Wyo. 227; Holdsworth v. Blyth & Fargo Co., 23 Wyo. 52; they were waived by a failure to discuss

them in the brief, C. B. & Q. Ry. Co. v. Lampman, 18 Wyo. 106; the uncontradicted testimony as to the value of services rendered by plaintiff's attorney at $200.00 did not warrant the fixing of value of such service in another amount, especially where the amount fixed was reasonable, Peters v. Wright, 6 Ind. 183; Lussee v. Hays, 22 La. Ann. 307; 2nd Natl. Bank v. Donald, 56 Minn. 491; St. Louis Co. v. Humbert, 101 Ark. 532; Hayward v. Rogers, 62 Cal. 348; Western Ry. Co. v. Beason, 112 Ga. 553; Sleeper v. Des Moines, 93 N. W. 585; Edwards v. Co., 64 Ore. 208; discretion of the jury in the matter of credibility does not warrant the disregarding of plaintiff's testimony, Johnson v. Bank, 134 Ia. 731; Mark v. Storage Co., 31 So. 671; Harrigan v. Gilchrist, 121 Wis. 383; the bank was not charged by any act of Nash, who was acting for himself, Rock Springs Bank v. Luman, 6 Wyo. 123; Grow v. Cockrill, 36 L. R. A. 89, it was not alleged that the representations were made to induce defendants to act upon them; such allegations were necessary to state a cause of action, 12 R. C. L. 323; Bank v. Swan, 3 Wyo. 356; Christensen acted for himself and Hale and wife both, 30 Cyc. 487, 20 R. C. L. 882, C. S. 4178, 4180.

*Kinkead & Henderson* in reply.

The Wyoming cases cited in respondent's brief relate to proceedings in error. An assignment of error of law occurring at the trial and excepted to is not indefinite, Walbol v. Steinhoff, 25 Wyo. 227; the authorities cited by respondent are not in point upon the facts, in fact some of them support the contention of appellant. Most of the cases cited dwell upon the question of evidence disregarded by the jury.

BLUME, Justice.

This is an action brought by the Hillsdale State Bank as plaintiff against James C. Christensen, W. W. Hale and Ella L. Hale as defendants, on a promissory note of $1230.25, made by defendants to said bank on January 2,

1919.  Christensen made default but W. W. Hale and Ella
L. Hale answered, alleging fraud as hereinafter mentioned
to their damage in the sum of $7000.  The case was tried to
a jury.  At the close of the testimony the court directed a
verdict for plaintiff and judgment was entered thereon.  W.
W. Hale and his wife Ella L. Hale appeal and they will
hereafter be referred to as appellants.

1.  The main question in the case is as to whether or not
there was sufficient testimony in the case to submit the issue
of fraud to the jury.  Appellants pleaded that about June
1st, 1918, they and said Christensen were about to pur-
chase, on their joint account, a herd of cattle to be run on
the lands of appellants in the vicinity of Hillsdale, in this
state; that appellants were residents of Des Moines and
said Christensen a resident of the vicinity of Hillsdale;
that J. C. Nash then was and now is the president of said
plaintiff bank; that one F. O. Osborn then was and now
is the cashier of said bank; that said J. C. Nash then owned
262 head of steers of inferior quality and that he and
Christensen, to the knowledge and with the connivance and
participation of said bank, conspired to defraud appellants
by selling said cattle to said Christensen and appellants for
a price much in excess of their value, giving appellants to
understand that said cattle belonged to some one else, when
in fact they were owned by said Nash; that the purchase
price of said cattle was $20,336.32 for which appellants
and Christensen executed a promissory note; that in De-
cember, 1918, plaintiff bank took possession of said cattle
and sold them for $1771.75 less than the purchase price;
that after applying $541.54 to the credit of appellants and
Christensen in said bank, there was left a balance due of
$1230.25, for which appellants and Christensen executed
the note in suit, on demand of the bank; that appellants
had no knowledge of said fraud at the time of the execu-
tion of either of said notes for $20,336.32 or $1230.25.  The
basis of the fraud herein is the claim that the interest of
Nash in the cattle in question was concealed from appel-

lants. Nash was president of plaintiff bank. He did not, however, have the management thereof, although he had a real estate office in the same building with the bank. The latter was managed by F. O. Osborn, cashier, son-in-law of Nash. The cattle in question were owned jointly by Nash and one E. M. Sandy, were located in Nebraska, bought by Christensen and shipped to Wyoming to appellant's ranch. It seems to be the theory of counsel for appellants, in the first place, that the note in suit, which is for the principal sum of $1230.25, is in fact but a renewal of the indebtedness arising out of the purchase price of said cattle, and that, hence, if the defense of fraud is established as against Nash, it is also established against the note in suit, although that was made to the plaintiff bank.

The cattle were bought on June 26, 1918, for $18,864.00. A note was executed on that date for $20,336.32, which included the sum of $584.13 for advance interest, and the sum of $897.89 for expenses for shipping the cattle. This amount of $897.89, so the testimony shows, was paid and advanced by the plaintiff bank. An attempt was made to negotiate said note in Omaha, in order to repay the bank the amount advanced by it, but the attempt failed. The latter, so far as the evidence shows, had no interest in the cattle and no interest in the note of $20,336.32 except the amount of $897.89 already mentioned. The cattle were sold in December, 1918, bringing $19,088.00 and $541.54 a total of $19,629.54. The amount due to Nash at that time was $18,864 principal plus $758.31 interest, a total of $19,622.31; or, in other words, the sale of the cattle brought more than the amount due to Nash. By reason of the amount of $897.89 advanced by the plaintiff bank as above mentioned and a further amount of $111.52 later advanced by said bank, and by reason of expenses of sale, there was still due from Christensen and Hale, after the sale of said cattle, the sum of $1771.75. From this was subtracted the sum of $541.50 which was on deposit in the plaintiff bank, leaving the sum of $1230.25, for which the note in suit was given.

Mr. Osborn testified that this represented a loan made by
the bank to Hale and Christensen, and, in effect, that it was
not in any way connected with the purchase price of the
cattle. There is no substantial evidence disputing this.
Nash was evidently paid the full amount due him, leaving
the balance to be carried by the bank, and the note in suit
cannot, accordingly, be treated, as counsel for appellant
would have it done, as a balance still due on the purchase
price of the cattle. Hence if the bank is liable for fraud,
that claim cannot be based on any personal fraud of Nash,
but must be traced to the bank itself. Before, however,
considering the evidence directly bearing on that issue, we
shall briefly touch upon preliminary matters, namely, to
what extent Christensen and Nash are involved in any
fraud, and what bearing that might have upon the fraud,
if any, of the plaintiff bank.

Nash and Christensen went to Nebraska to look the cattle
over. Christensen knew the interest which Nash had in
them and bought them and the cattle were shipped to Wyo-
ming and placed on appellants' ranch near Hillsdale. We
do not think that there is sufficient evidence in the record
to connect Christensen with any conspiracy to defraud ap-
pellants. He was at that time and had been since 1916 a
tenant of appellants. Christensen testified that he and Mr.
Hale were partners. The latter testified that they were in
together on a "stock-sharing" plan. They had evidently
owned cattle together, and the cattle in question were evi-
dently bought in pursuance of a general line of business in
which Christensen and appellants were engaged. There is
no reliable evidence in the record that Christensen was in
any way personally indebted to either Nash or the bank or
that any particularly friendly feeling existed between them.
True, Christensen should have communicated to appellants
the fact that he bought cattle in which Nash was interested.
Counsel for appellant seem to think that he attempted to
conceal that fact from appellants, because of a letter which
he wrote to Mr. Hale on July 1st, 1918, in which he stated:

"Mr. Nash went with me down to Nebraska and bought some cattle 262 head in all 2 and 3 year old steers."

There is no testimony in the record that Chritsensen, when he bought cattle, expected or had reason to expect that Nash or anyone else would do the buying for him, and it would seem, therefore, that the word "I" was simply omitted before the word "bought" and the letter does not mean, we think, as counsel construe it, that Nash bought the cattle for him and appellants. Christensen, when asked in regard to it, stated: "As long as I thought the cattle were cheap enough what difference would it make where I bought them or who I bought them from?" It is not at all unlikely that he thought that the papers executed in connection with the transaction sufficiently advised appellants of the actual facts, in as much as the note for the purchase price was made direct to J. C. Nash, and this note had at that time been signed by Christensen and had been forwarded to appellants for their signature.

Christensen, as stated, knew the interest which Nash had in the cattle, and bought them at least for the joint account of himself and appellants. It would seem that under these circumstances no particular duty devolved upon Nash to communicate the fact of his interest also to appellants, unless such duty arose, perhaps, out of the knowledge, for instance, that appellants were relying upon him to protect their interests. See 13 C. J. 384. To meet this point, Mr. Hale testified that he met Nash in the summer of 1916; that Nash then recommended Christensen to him as an honest and industrious man and as a good tenant; stated that Christensen was greatly indebted to the Hillsdale State Bank, of which Nash was president, but that Christensen, if he became Hale's tenant, could make money for Hale as well as for himself and thus be enabled to get out of debt; that the bank would furnish appellants and Christensen all the money they might need to handle whatever stock they got on the place, and that he, Nash, would make the selec-

tion of cattle when they were ready to buy and also help dispose of them when ready for market. No attempt was made to show by any other testimony that Christensen was in fact indebted to the bank. Further, it is hardly likely that Nash could, at the time this conversation took place, have had in mind the sale of his Nebraska cattle to Christensen or to appellants, since probably few of these cattle were then in existence. In fact, it does not appear that he then had any interest therein. Nor is it likely that Nash had much recollection in 1918 of the conversation, casual as that seems to have been, which he had with Mr. Hale in 1916. If, however, we assume the contrary, it is not likely that he communicated it to the bank, of which, though president, he did not have the active management. There is no direct testimony that he did, and we do not think that the circumstances shown are sufficient to create anything but a conjecture in relation thereto. It follows, from what we have said, that the bank could not be held to have violated any duty because of what took place between Nash and Hale in 1916, and we turn to inquire whether its dealings with appellants disclose any fraud in any other way. These dealings, as to the point involved, consisted of the following correspondence, and to that we now direct our attention.

On June 27, 1918, evidently upon the return of Nash and Christensen from Nebraska, F. O. Osborn wrote the following letter to the appellant W. W. Hale over his signature as "Cashier:"

"Mr. Christensen has just purchased 262 head of steers which Mr. Nash helped him to buy. The cattle arrived in Hillsdale Sunday morning. I am enclosing a note herewith for $20,336.32 which is made up as follows:

| | |
|---|---|
| 262 steers at $72.00 per head | $18,864.00 |
| Freight | 812.25 |
| Feed in transit | 51.91 |
| Carfare for Mr. Christensen | 23.73 |
| | |
| Total | $19,751.89 |
| Interest on this amount for 120 days | 584.43 |

Kindly sign the note and have Mrs. Hale sign and return to us as soon as possible.''

Mr. Hale hesitated to sign and desired a bill of sale for one-half interest from Christensen. Finally, after some letters had been written by Mr. Hale, a telegram signed by ''Hillsdale State Bank'' was sent to him on July 14, 1918, saying ''Sign note and send at once. Everything OK,'' and the appellants thereupon signed and sent the note.

The foregoing letter stated the truth, but not all the truth. Reading it without considering the attendant circumstances, it might raise at lease a suspicion that an attempt was made to conceal the actual facts. It must, however, be borne in mind that Nash actually helped in buying the cattle, since in any event the joint owner with Nash in the cattle had to be satisfied. Further than that, the note was made to Nash, indicating on its face that he was interested in the purchase price of the cattle. There is no claim that Nash had ever promised to loan any money personally for the purchase of cattle, and Mr. Hale's thought that the bank was loaning the money does not seem to have been justified in view of the fact that the bank was not the payee of the note. Mr. Hale is a physician, presumably a man of a high degree of intelligence, and it would seem that the note, payable as it was to Mr. Nash, might well have caused him to make inquiry as to the extent of the bank's interest and the interest of Mr. Nash personally therein if he was not satisfied on those points. The mere fact that the bank knew that Nash had an interest in the cattle would not alone constitute fraud on its part. It was not, as stated, so far as

the evidence shows interested in the cattle or in the sale thereof in any way. The letter written by the cashier was gratuitous, so far as getting a note for the purchase price of the cattle was concerned. Bearing that in mind, it has not been pointed out to us how Osborn's fraud, if his conduct might be construed to be fraudulent, could be said to be an act within the scope of his authority. See 14a C. J. 775. We need not decide the question of his authority, however, but we think we should, at least, take into consideration the interest or lack of interest of the bank in, and its relationship to, the cattle and the sale thereof, in order to determine whether the facts are sufficiently clear to charge it with an intentional fraud, assuming that Osborn was acting in its behalf, without, however, saying as to whether or not suit might have been brought either against Nash or Osborn personally.

Further than that, there is no very satisfactory evidence that anyone was actually defrauded. It was the theory of counsel for appellants at the time of the trial that the damage, if any, in this case was the difference between the market value at the time of the purchase of the cattle and the price actually paid for them. This theory seems to be supported by authority. 27 C. J. 102; Constant v. Lehman, 52 Kan. 227, 34 Pac. 745. And we shall assume it to be correct for the purposes of this case. The price paid for the cattle was about $72.00 per head. There is evidence tending to show that appellants were short on feed and water in the summer and fall of 1918. and that the cattle were damaged by reason of that fact to no little extent. Even so, however, the cattle which were sold at the auction brought over $74.00 per head, 200 head of them could have been sold, so Christensen stated, for $85.00 per head some time before they were disposed of at auction, and it is unquestioned that one steer sold on the market at Omaha for $91.54 and three steers at an average of $150.00 each. For aught that appears in the record, the cattle if sold on the open market at Omaha, instead of at auction, might have

netted a fair profit and in such event this case would not have been here.    There was no evidence as to the market value of the cattle at the place in Nebraska where they were purchased.   But if we waive that point and turn to the evidence as to the value at Hillsdale, we find that Mr. Diehl testified that he thought that $60.00 per head would be a fair value, but he admitted that he was not very familiar with values of cattle.   Another witness of appellants, Mr. Lancaster, a man apparently more experienced in handling cattle than Mr. Diehl, stated that the average value of all the cattle was from $70.00 to $75.00 per head, or, in other words, at least as much as was paid for them.   This testimony is indirectly substantiated by that of Mr. Christensen.   We have accordingly come to the conclusion that, considering the evidence in this case as a whole, and in view of the rule established in this state that fraud must be proven by clear and convincing evidence (First National Bank v. Ford, 30 Wyo. 110, 216 Pac. 691, 698 and cases there cited), we cannot say that the trial court erred in considering the testimony insufficient to show fraud, and in taking that issue from the jury.

2.    The promissory note sued on provided for a reasonable attorney's fee in case of suit.   The petition asked for $200.00, and the court directed the jury to return a verdict for that amount.   The plaintiff bank put several attorneys on the witness stand to show what amount would be reasonable.    The defendant introduced no evidence on that point. The testimony of the witnesses for the plaintiff varied to some extent, and it is somewhat doubtful whether they all agreed that as much as $200.00 should be allowed.    Even if, however, we assume that they all agreed, the court nevertheless erred in taking the question from the jury and directing a verdict thereon.    While the cases are not in absolute harmony, the greater weight of authority clearly is, we think, that the question should be submitted to the jury, following the general rule that the jury has a right to pass upon the credibility of expert and opinion testimony.    Wil-

son v. Manville 194 Ia. 26, 188 N. W. 932; Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; Steele v. Hammond, 136 App. Div. 667, 121 N. Y. S. 589; McDonald v. De Vito, 118 App. Div. 566, 103 N. Y. S. 508; Brooklyn Heights R. R. Co. v. Brooklyn City R. R. Co., 124 App. Div. 896, 109 N. Y. S. 31; 6 C. J. 764; cases collected in note to 45 L. R. A. (N. S.) 181, 182. The matter is to some extent under the control of the court after verdict. If the finding is too large it may be reduced; if so small that justice has not been done, the court may, in its discretion, grant a new trial. Wilson v. Manville, supra.

The judgment herein must accordingly be affirmed, except as to the attorney's fees. On that question, the judgment is reversed, and the cause remanded for a new trial, the sole issue to be tried being the value of the attorney's fees to be allowed to plaintiff bank, unless the attorney's fees are remitted by plaintiff, in which case the judgment, less the amount of attorney's fees, may stand. The lower court may enter a new judgment and make all other necessary and proper orders not inconsistent herewith.

POTTER, Ch. J., and KIMBALL, J., concur.