(36 Misc. Rep. 529.)

SCHLESINGER v. DUNNE et al.

(Supreme Court, Appellate Term. December, 1901.)

1. ATTORNEYS—COMPENSATION.
    In determining the value of services of an attorney, besides the conditions connected with the subject-matter, the professional standing of the claimant, his reputation in the specialty in which he was engaged, and the importance of the work done, measured by the values involved, the time taken, and the result of the services, are to be considered.

2. SAME—EVIDENCE.
    Where expert evidence as to the value of services of an attorney was conflicting, and three witnesses placed the value from $250 to $500, and one estimated the value at $25, a finding for $40 is contrary to the weight of evidence.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Mark M. Schlesinger against John W. Dunne and others to recover for legal services. From the judgment, plaintiff appeals. Reversed.

Argued before McADAM, P. J., and MacLEAN and SCOTT, JJ.

Avery, Schlesinger & Paul (F. C. Avery, of counsel), for appellant.
Howe & Hummel, for respondents.

McADAM, P. J.　On the morning of April 16, 1900, one of the defendants called at the plaintiff's residence and informed him that, on the night before, defendant and the other defendants had agreed to buy out the interests of a corporation then conducting Koster & Bial's Music Hall, for which they proposed to pay $2,500 in cash, to give their notes for $10,000 to mature the following season, and to assume a lease at $45,000 per annum; and he stated to the plaintiff that he wished him, as their counsel, to represent them that morning, and advise them as to the feasibility of closing the title. Plaintiff accompanied him to Koster & Bial's, arriving there at about 8:30 a. m.　He met there Mr. Manson, the representative of the Continental Amusement Company, the corporation then conducting Koster & Bial's, and shortly afterward Mr. Ryley, one of the other defendants, appeared.　All that day, until 2:30 o'clock in the afternoon, the conference lasted, during which the plaintiff "studied various papers,—forty in number, at least."　He found everything complicated; had to call a number of people on the telephone; examined leases and papers relating to ground rents of the property, also mortgages covering the leasehold; read over various assignments of leases and the original lease; investigated whether various corporations which had been tenants and subtenants had properly executed the various documents; and examined the minute books to ascertain what authority had been conferred to execute the instruments.　Plaintiff found among the papers an agreement made by a former subtenant, the Robert Blei Syndicate, with Koster & Bial's, wherein the former agreed to pay the latter $25,000 in the year 1900, in addition to the rent.　Discussion followed as to whether this was a contract obligation or a penalty.　After investigation and examination the plaintiff finally advised the defendants not to pay $2,500 in cash, and not to give their notes for $10,000, and not to execute the contract.　The plaintiff explained to the defendants the condition of the electric plant in the building, utilizing information he had received as to the same, and informed them that their first year's expenses would be, under the proposed contract, $12,500, purchase price; $45,000, rent; and then the additional $25,000; aggregating $82,500.　The plaintiff later in the day pursued his investigation at the office of the defendants in the Knickerbocker Building, and finally induced the defendants to abandon the proposed purchase.　For these services the plaintiff claimed $250, and the justice awarded him $40.　The plaintiff appeals on account of the inadequacy of the recovery.

Besides any special circumstances or conditions connected with the subject-matter, there must be considered, in determining the value of legal services, the professional standing and experience at the bar of the claimant; his reputation in the specialty in which he

was engaged; the importance of the work done, measured by the magnitude of the interests or values involved; the time spent upon the work; the gravity of the question investigated and passed upon; the character of skill and experience called forth by the exigencies of the case; the result of the service; and the learning, integrity, and assiduity displayed by counsel in the performance of the labor. Wells, Attys. 563; 3 Am. & Eng. Enc. Law (2d Ed.) 420 et seq.; 1 Lawson, Rights, Rem. & Prac. § 198. Considering these elements, and the fact that three experts testified that the plaintiff's services were worth from $250 to $500, and one expert produced by the defendants estimated their value at $25, it does seem to us that the value fixed by the justice, to wit, $40, is contrary to the preponderance of evidence, as well as to our own judgment, which places the value at a higher figure. Expert evidence, after all, is merely the opinion of the witnesses offered, and the court or jury may exercise an independent judgment in determining how far it will follow the opinions expressed. Reves v. Hyde, 14 Daly, 431; Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; Muller v. Ryan, 2 N. Y. Supp. 736; 3 Am. & Eng. Enc. Law (2d Ed.) 423. While the justice had the right to add his individual opinion to that of the one expert, it does not prevent this court from respecting the opinion of the majority of the experts, to the extent of holding that $40 is inadequate compensation for the work performed by the plaintiff, considering its nature, importance, and the time bestowed upon it. For these reasons, the judgment must be reversed and a new trial ordered, with costs to the appellant to abide event.

Judgment reversed and new trial ordered, with costs to appellant to abide event. All concur.