[S. F. No. 5074. Department One.—September 22, 1909.]

WILLIAM CRANE SPENCER, Trustee, Appellant, v. GEORGE H. COLLINS et al., Defendants and Respondents; M. C. HASSETT et al., Defendants and Appellants.

CONTRACT OF MINOR—SUFFICIENCY OF DISAFFIRMANCE—NOTICE TO ONE PARTNER.—A contract entered into by a minor over the age of eighteen with a firm of attorneys at law, is sufficiently disaffirmed by him, within the requirements of section 35 of the Civil Code, by a conversation had by him with one of the members of the firm a few days before attaining his majority, in which he stated in effect, that he "denied the contract and did not intend to fulfill it," or "I disaffirm that contract."

ID.—INTENT TO REPUDIATE CONTRACT.—A contract or conveyance of a minor may be avoided by him by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect, and it is questionable whether express notice of disaffirmance to the adverse party is required, provided the act or declaration of repudiation is in its nature public and unequivocal.

ID.—NOTICE TO ASSIGNEE UNNECESSARY.—Assuming that the party contracting with the minor is entitled to some form of notice of the minor's election to disaffirm, such notice need only be given to the party with whom the contract was made, and need not be given to such party's assignee.

ID.—ASSIGNMENT OF PART INTEREST IN CONTRACT.—Where the contract made between the minor and the firm of attorneys provided for the

assignment to such attorneys of a specified interest in property of the minor which they undertook to recover, one who subsequently advances money to such attorneys to enable them to perform the contract, and takes from them a written assignment of a portion of their interest thereunder, takes the interest so assigned subject to the possibility of the contract being repudiated by the minor by notice given to the parties with whom he contracted.

ID.—NOTICE OF REPUDIATION TO ONE PARTNER.—One of the partners in such firm of attorneys is the agent of the partnership in the transaction of its business, and a notice given to him by the minor of his disaffirmance of the contract is a sufficient notice to the other partner.

ID.—CONSIDERATION—PROFESSIONAL SERVICES TO BE RENDERED—PAYMENT OF REASONABLE VALUE OF SERVICES PERFORMED.—Where the only consideration which was to pass to the minor under such contract was the performance of professional services by the attorneys, the minor is entitled to disaffirm the contract, upon paying to the attorneys such a sum of money as is the equivalent of the services rendered by them. Such equivalent is the reasonable value of the services rendered prior to the time of disaffirmance. In the present case, the finding that the amount of money paid the attorneys was ample compensation is held to be supported by the evidence.

ID.—VALUE OF ATTORNEYS' SERVICES—EXPERT TESTIMONY UNNECESSARY.—While the testimony of experts is admissible to prove the value of attorneys' services, it is not essential. The court or jury may determine such values by their own experience and knowledge of the character of such services.

ID.—SERVICES RENDERED AFTER REPUDIATION.—Such attorneys were not entitled to payment for work done after receiving notice that the minor had repudiated the contract, whether the work was intended primarily for their own interests or for the benefit of the minor.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. Henry A. Melvin, Judge.

The facts are stated in the opinion of the court.

Walter H. Robinson, M. C. Hassett, F. J. Hambly, and H. V. Morehouse, for Appellant.

Chickering & Gregory, and Howell C. Moore, for Respondents.

SLOSS, J.—In 1884 Abner Coburn, a resident of the state of Maine, died in that state, leaving a will whereby he dis-

posed of an estate valued at eleven million dollars. By this will the residue of the estate, consisting of stocks, bonds, and other personal property, as well as real property in Maine, North Dakota, and elsewhere, was given to various relatives of the decedent. Among those named in the residuary clause were Alonzo C. Marston, a nephew of the testator, and Abner Paul Marston, son of Alonzo. The will gave to Abner Paul Marston, who is one of the defendants in this action, three fifty-fifths of said residue. Whether this share was to come into the possession of Abner Paul on his attaining his majority, or at a later period, was a question in dispute between Abner Paul and Alonzo.

Abner Paul Marston was born on October 4, 1878. In July, 1898 he was, therefore, of the age of nineteen years and nine months. At that time he was residing at San Jose in this state. H. V. Morehouse and F. J. Hambly were engaged as partners in the practice of the law at San Jose. On July 8, 1898, a written agreement was entered into whereby Abner Paul Marston employed Morehouse & Hambly as his attorneys, authorizing and empowering them to attend to all legal matters necessary to protect his rights and to settle his estate upon his arriving at the age of twenty-one years. By this writing he agreed, upon the turning over of said estate to him and the settlement of the accounts of the trustees appointed to carry out the terms of the will, to pay to said Morehouse & Hambly the sum of ten per cent of the appraised value of his said estate and further agreed to advance to said Morehouse & Hambly on or before the twenty-fourth day of July, 1898, the sum of twelve hundred and fifty dollars, to be used by them in making a trip to North Dakota and Maine and examining the condition of his property. By this writing he assigned to said Morehouse & Hambly, out of the estate devised and bequeathed to him, ten per cent of its appraised value. The instrument was also executed by Morehouse & Hambly, who agreed therein to take charge of the aforesaid business of said Marston and to take all steps necessary to preserve his property and estate and fully inquire into and investigate its condition and make a full and correct report thereof to him.

On July 18th the parties executed a second writing, similar in its main features to the one just described, with the

exception that the proportion assigned or to be paid to More-
house & Hambly was fixed at fifteen per cent instead of ten
per cent as in the earlier agreement.   Prior to the execution
of either of these writings one S. W. Boring had been ap-
pointed guardian of the person and estate of the minor, and
the guardian joined in this second agreement.   After Abner
Paul Marston came of age he compromised with his father
the differences between them.   The courts of Maine construed
the will in accordance with the contention of the son, who
thereupon, through the defendant George H. Collins, received
from the trustees acting under the will of Abner Coburn the
interest bequeathed to him, consisting of property worth at
that time something over two hundred and thirty thousand
dollars.   He had theretofore conveyed all of this property to
Collins, who took the same as trustee to pay the debts of the
younger Marston, to make certain payments to Alonzo C. pur-
suant to the compromise above mentioned and to turn over
the residue to Abner Paul Marston.   Collins refused to recog-
nize the claim of Morehouse & Hambly to any share of the
estate.

The partnership agreement between Morehouse and Hambly
provided that the former should have a two-thirds and the
latter a one-third interest in the business of the firm, and this
agreement applied to the contracts just mentioned.   After
various partial assignments by Morehouse and Hambly, More-
house assigned his remaining interest to the plaintiff, William
Crane Spencer, who brought two actions against Abner Paul
Marston, and Collins as his trustee, to recover Morehouse's
share of the ten and fifteen per cent proportions of the estate
provided for by the respective writings.   In these actions
M. C. Hassett, Hambly, Jettora W. Hyde, and George E.
Whitaker were made parties defendant under an allegation
that they claimed an interest in the subject of the litigation.
Jettora W. Hyde was an assignee of Hambly's interest.   Has-
sett and Whitaker had each received an assignment of a por-
tion of the interest claimed by Morehouse & Hambly.   By
cross-complaints, which were substantially similar to the orig-
inal complaints in the two actions, these defendants sought
to recover the shares claimed by them under the contracts in
question.   The actions were by consent of the parties consoli-
dated and tried together and the court made findings, from

which it drew the conclusions of law "That the plaintiff is not, nor are any of the defendants who have cross-complained against the defendants George H. Collins or Abner Paul Mar-. ston, the owner of any interest in any of the property conveyed to the defendant Collins nor entitled to recover anything from either of said defendants Marston or Collins, but that said defendants Marston and Collins are entitled to recover costs against said plaintiff and against said cross-complainants." Judgment was entered accordingly. The plaintiff and the unsuccessful defendants, with the exception of the defendant George E. Whitaker, appeal from the judgment and from an order denying their motion for a new trial.

Among the findings was one to the effect that the contract of July 8th was canceled by the contract of July 18th, and that no services were rendered under the first named contract by Morehouse & Hambly. The appellants acquiesce in the correctness of this finding and limit their claims on these appeals to such rights as they may have under the agreement of July 18th, i. e. the fifteen-per-cent contract.

At the time this agreement was made Marston was a minor over the age of eighteen years. The court found "That on or about the second day of October, 1899, said defendant Abner Paul Marston, having theretofore employed other counsel, disaffirmed the said contract bearing date July 18, 1898, and discharged the said Morehouse and Hambly from his employ." It was further found that said Morehouse and Hambly had, prior to the second day of October, 1899, received from Marston sums aggregating $5,062.55, and that "the sums thus received were the full value and equivalent for all services rendered by them under said contract of July 18, 1898, up to the time of the disaffirmance of said contract by the said minor." Section 35 of the Civil Code reads as follows: "In all cases other than those specified in sections thirty-six and thirty-seven, the contract of a minor, if made whilst he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards; or, in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor whilst he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying

its equivalent." (Sections 36 and 37 deal with matters not material here.) Under the finding of the court that Marston had on October 2d, two days before attaining his majority, disaffirmed the contract, and the further finding that he had theretofore paid to Morehouse and Hambly the full value and equivalent of all services rendered by them up to the time of the disaffirmance, the only possible conclusion of law was, therefore, that drawn by the trial court,—namely, that Morehouse and Hambly, or those claiming under them, were not entitled to any recovery as against the minor or his trustee.

Both findings, i. e. that of disaffirmance and that declaring the receipt by Morehouse & Hambly of the full value and equivalent of all services rendered, are attacked by the appellants.

On the issue of disaffirmance, there was evidence which the trial court was entitled to accept, to the effect that on October 2, 1899, Abner Paul Marston, who had theretofore retained Howell C. Moore as his attorney, met Morehouse in a saloon in San Francisco. He came out of the saloon with Morehouse and on the sidewalk met Moore. Morehouse stated to Moore that he had heard some strange reports and asked Moore what he was doing. Moore said he was representing his client Marston. Morehouse then asked Marston what he intended to do about the contracts, and, according to Marston's account, the latter said "that he denied them; that he did not intend to fulfill them; answered to that effect." Moore's testimony was that in answer to Morehouse's reference to the contract Marston had said: "Well, I disaffirm that contract." That the declaration of Marston, whether we accept his own version, or that given by Moore, constituted a sufficient disaffirmance so far as Morehouse is concerned, is not open to question. (We are not at this point, of course, considering the necessity of restoring the consideration as a condition of complete disaffirmance.) A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect. (Page on Contracts, 86; *Hastings* v. *Dollarhide*, 24 Cal. 195; *Drake's Lessee* v. *Ramsay*, 5 Ohio, 251; *Singer Mfg. Co.* v. *Lamb*, 81 Mo. 221.) Under this rule, which is thoroughly well settled, it may be questioned whether express notice of disaffirmance to the adverse party is re-

quired, provided the act or declaration of repudiation is in its nature public and unequivocal. Thus, it has been held that the deed of a minor, at all events of a minor remaining in possession, may be disaffirmed by his subsequent conveyance to a third party (22 Cyc. 556, and cases cited). But if we assume that the party contracting with the minor, and every such party, is entitled to some form of notice of the election to disaffirm, we are satisfied that notice to Morehouse was all that was required to terminate the rights of all the appellants. In *Downing* v. *Stone,* 47 Mo. App. 144, the court held that notice of rescission should be given to the party with whom the infant contracted, not to an assignee. This, we are satisfied, is the true rule, and the one that is necessary for the full protection of the minor in his right of disaffirmance. Applied to the facts of the case at bar, it disposes of the contention that the disaffirmance was ineffectual for want of notice to the plaintiff, to Jettora W. Hyde, to Whitaker, or to Hassett. With reference to the last named, a somewhat fuller statement of the facts may be required. By the original agreement, that of July 8, 1898, Marston undertook to advance to Morehouse & Hambly $1250 to be used by them as expenses in traveling to North Dakota and Maine. The court found that Marston was unable to raise this sum of money and enlisted the assistance of Morehouse in securing it. After several unsuccessful efforts Morehouse and Marston applied to Hassett, who arranged to secure a loan of $1250 from one Costello. Marston having decided that he wished to accompany Morehouse on the trip, requested Hassett to secure twenty-five hundred dollars, and Hassett did obtain a loan of this sum from Costello. As a condition of the making of the loan, it was required that a promissory note be given signed by Morehouse, Marston, Boring as guardian, and Hassett, and further that Hassett "should receive a five per cent interest in a fifteen per cent contract to be drawn running to said Morehouse & Hambly and that said Morehouse & Hambly simultaneously therewith should assign to said Hassett a five per cent interest therein; that in the event that Morehouse & Hambly could not make a trip east or attend to the matters pertaining to the estate of said minor, that said Hassett should make such trip and attend to the interests of said minor." In accordance with this agree-

ment the instrument of July 18th was drawn and signed ˙
by Abner Paul Marston, Boring, his guardian, Morehouse
& Hambly.  Attached to it was an assignment from More-
house & Hambly to Hassett of one third of their interest
in the "foregoing contract," in consideration of services and
other accommodations to be given *to said Morehouse and
Hambly.*  The Costello note was ultimately paid by Marston.
It is now argued that inasmuch as the transfer to Hassett of
a five per cent interest in the estate of the minor was made
pursuant to an agreement with the minor himself, the result-
ing writings are to be construed as defining an agreement
between the minor and Hassett and that this agreement
could not be disaffirmed without notice to the latter.  The
argument, however, overlooks the fact that in compliance
with Hassett's own wishes, a definite agreement for the ren-
dition of services by Hassett to the minor or payment for
such services by the minor to Hassett was not made.  The
transaction, as finally reduced to writing, must under famil-
iar principles be deemed to express the actual intent of the
parties and that intent was that Marston should make an
agreement for fifteen per cent with Morehouse & Hambly,
and that Morehouse & Hambly should assign a portion of
that interest to Hassett.  Hassett accordingly took whatever
interest he had in the agreement, not directly from the minor,
but from Morehouse & Hambly to whom the minor granted
it by his contract.  Hassett therefore stands in the same posi-
tion as any of the parties claiming an interest by assignment
from Morehouse & Hambly.  Each of such parties, accept-
ing a transfer of an interest in a contract made with a minor,
took that interest subject to the possibility of its being repu-
diated by the minor.

The position of Hambly is different.  But he and More-
house were partners, and, while that fact is not recited in the
agreements, it is clearly shown by the evidence that the con-
tracts in question were partnership transactions.  Morehouse
testified that he and Hambly became partners on January
1, 1898, and that under the terms of their association, More-
house's interest was two thirds and Hambly's one third.
Upon the dissolution of the partnership in August, 1900, their
interests in these contracts were divided in this proportion.
As a partner, Morehouse was an agent of the partnership

in the transaction of its business (Civ. Code, sec. 2429; *Krasky* v. *Wollpert,* 134 Cal. 338, [66 Pac. 309]), and, accordingly, upon the principle that notice to an agent is notice to the principal (Civ. Code, sec. 2332), notice of disaffirmance to Morehouse was sufficient notice to his partner Hambly.

The only matter that remains to be considered is whether the minor, before the time of disaffirmance, had paid Morehouse & Hambly the equivalent of the consideration which he had received. The only consideration which was to pass to the minor under the agreement of July 8, 1898, was the performance of professional services by the attorneys with whom he was contracting. The services performed under the contract are fully detailed in the testimony of Mr. Morehouse and may be briefly summarized as follows: Shortly after the execution of the agreement Mr. Morehouse went with Marston to Fargo, North Dakota, and there made investigations into the *status* of Marston's property rights in that state. This occupied three days. From there he went to Maine and was similarly engaged for five days. Upon his return there were frequent interviews between Marston and Morehouse concerning the former's property rights. In addition to these services Morehouse and Hambly assisted the minor in obtaining loans of money from various persons. It appears that Marston was a young man of improvident and somewhat dissipated habits and that he was constantly pressed for funds. Each of the loans which he succeeded in getting was obtained only upon the condition of paying very heavy commissions and in most, if not in all instances, the net proceeds, after the deduction of all expenses, were equally divided between the minor and his attorneys. In this way Morehouse & Hambly received from the minor, prior to his declaration of disaffirmance, over six thousand dollars. The testimony of Hambly himself was that this amount was credited or might be credited upon the claims of Morehouse & Hambly against Marston for services. The finding of the court that $5,062.55 had been received by Morehouse and Hambly is therefore fully sustained by the evidence. The court found, as has been stated, that this amount was the full equivalent for all the services rendered by the attorneys under their agreement. The court was fully authorized to so find. It is argued that the finding is unsupported because there was no

testimony of the value of the services. The position of the appellants is, apparently, that before a court can find the value of professional services it must have before it the testimony of experts to the effect that certain services are of a certain value. But this is not the law. The testimony of experts is, of course, admissible to prove the value of attorneys' services (*Forsyth* v. *Doolittle,* 120 U. S. 73, [7 Sup. Ct. 408]; *Louisville.etc. Co.* v. *Wallace,* 136 Ill. 87, [26 N. E. 493]). But the opinions of the experts in such cases are not binding upon the jury, who may apply to the testimony "their own experience and knowledge of the character of such services." (*Head* v. *Hardgrave,* 105 U. S. 45; *Forsyth* v. *Doolittle,* 120 U. S. 73, [7 Sup. Ct. 408]; *Estate of Dorland,* 63 Cal. 281; *Schlesinger* v. *Dunne,* 36 Misc. 529, [73 N. Y. Supp. 1014].) "Expert evidence, after all," it is said in the case last cited, "is merely the opinion of the witnesses offered, and the court or jury may exercise an independent judgment in determining how far it will follow the opinions expressed." If the jury may form a judgment as to the value of services in opposition to the opinions of experts, it necessarily follows that the testimony of experts is not essential. And so it has been held in cases tried before a jury (*Bourke* v. *Whiting,* 19 Colo. 1, [34 Pac. 172]; *Gibbons* v. *Missouri Pac. R. R. Co.,* 40 Mo. App. 146), as well as with respect to issues determined by a court or referee (*Noftzger* v. *Moffett,* 63 Kan. 354, [65 Pac. 670]; *Dempsey* v. *Schawacker,* 140 Mo. 680, [38 S. W. 954, 41 S. W. 1100]). If this doctrine is applicable to jury trials, there is much more reason for applying the doctrine in cases tried before a court. The value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and nature of such services, its own experience furnishes it with every element necessary to fix their value.

No time need be spent in giving reasons for our conclusion that the evidence of the character and amount of the services here rendered fully supported the finding that they had been adequately recompensed. The court may have well concluded that time and labor expended in obtaining for a minor large loans, on the terms and under the circumstances here shown, was not a service calling for compensation under the terms of the contract. The amount received by the attorneys was suffi-

cient to allow them a liberal payment for all other services rendered.

After the notice of disaffirmance Morehouse went to Maine again and did some work there in connection with Marston's estate. Whether this trip was intended primarily in his own interest or for the benefit of the minor, he was not, of course, entitled to payment for work done after he had received notice that the minor repudiated the agreement.

The appellants take the position that a payment of the value of what the minor had received is not a restoration of the consideration received by him or a payment of its equivalent within the meaning of section 35 of the Civil Code. The argument is that, where there is an express contract between the parties for personal services, the only consideration that a court can look to is the consideration agreed to be paid and that, therefore, the minor's right of disaffirmance was conditional upon his paying to Morehouse & Hambly what he had agreed to pay them, viz.: fifteen per cent of his estate. This argument is obviously unsound. Carried to its logical conclusion, it means that a minor can disaffirm a contract wholly executory only by performing it. The right of disaffirmance, if the position be well taken, would be absolutely worthless. The fallacy of the argument lies in the assumption that the consideration to be restored is what the minor had agreed to do, i. e. the consideration received by the adverse party. All the minor is obliged to restore is what *he* received from the other side. That, in this case, consisted of services. The services themselves not being capable of restoration, the minor was required to return their equivalent, which consisted of the reasonable value of such services.

The foregoing discussion is sufficient to dispose of the case. It will not be necessary to refer to the additional facts shown by the record, although the respondent bases upon them further reasons for sustaining the action of the court below.

The judgment and order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.