MARY WEAVER, Plaintiff, *v.* WILLIAM E. SCRIPTURE, Defendant.

Supreme Court, Oneida County, April 20, 1925.

Trial — verdict — application to set aside verdict of jury in action on promissory note on ground verdict was without evidence to support it — defendant claimed offset based on value of legal services performed — jury properly disregarded defendant's evidence as to value of said services — evidence of experts familiar with value of legal services not conclusive — new trial — casual remark of juror concerning defendant not such as to indicate bias — failure of defendant to protest against remark of juror precludes right to new trial on ground of unfairness of jury.

Defendant's application to set aside the verdict of a jury in an action upon a promissory note on the ground that said verdict was without evidence to support it will be denied, where it appears that defendant set up as an offset the value of legal services actually performed for the party through whom the plaintiff received the note upon which her action was predicated; that he sought to show the value of such services by the testimony of prominent members of the bar; and that the jury disregarded said evidence, since said testimony being in the nature of expert evidence the weight to be given to it was entirely for the determination of the jury.

A new trial will not be granted on the ground of unfairness of the jury in the absence of anything, except a casual remark of a juror concerning the defendant, indicating bias, particularly in view of defendant's failure to protest against the alleged remark during the trial.

MOTION by defendant to set aside the verdict of a jury and for a new trial.

*John H. McCrahon,* for the plaintiff.

*William E. Scripture,* for the defendant.

EDGCOMB, J.:

Defendant moves at Special Term, under section 552 of the Civil Practice Act, to set aside an adverse verdict of the jury and for a new trial. The grounds upon which the defendant deems himself entitled to the relief asked may be summarized as follows: (1) That the verdict is without evidence to support it, or at least is against the weight of evidence; (2) that the verdict was the result of bias and prejudice on the part of the jury, and that for this reason defendant did not have a fair trial.

When the jury returned its verdict the defendant moved on the judge's minutes for a new trial pursuant to the provisions of section 549 of the Civil Practice Act. That motion was denied. It will be noted that the first objection now urged to the validity of the verdict was passed on by the court on the motion at Trial Term, and was disposed of adversely to the defendant. Plaintiff insists that the defendant is for this reason precluded from raising the question that the verdict is contrary to the evidence on the present motion.

A defeated party is not compelled to move, under section 549 of the Civil Practice Act, to raise in the court below the questions specified in that section. He can raise all such objections to a verdict on a motion made at Special Term under section 552. (*O'Connor* v. *Healey,* 96 Misc. 278.) Section 549 is not mandatory; it permits the trial judge in his discretion to entertain the motion on the grounds stated. If such motion is not made, or if the trial judge should refuse to entertain it, then the defeated party may move on affidavits at Special Term for the same relief, and can, if the facts warrant, base his application on additional grounds. Whether a party whose motion made pursuant to section 549 has been entertained and denied at Trial Term can move at Special Term for the same relief upon the same grounds upon which he relied upon his former motion is questionable. Rather than to dispose of this motion on such a ground, I have preferred to take under careful consideration all the questions so strenuously urged by defendant on this motion and again review the decision I made at Trial Term.

It clearly appears that the defendant actually performed legal services for Mr. Weaver, through whom the plaintiff received the note upon which she seeks to recover. The value of such services is a proper offset to this note. It, therefore, becomes necessary to fix their value. Under our jurisprudence that must be done

by a jury. While the evidence shows the general nature of the services, the details do not appear. Doubtless this was not due to an oversight, but to the fact that Judge Scripture was the only witness who could testify as to the exact times when he was consulted by Mr. Weaver, and just what he did on those occasions, and he was prevented from testifying concerning any personal transactions with Mr. Weaver by reason of the latter's death.

A hypothetical question, covering fairly the evidence in the case, was put to three worthy and prominent members of the Utica bar, and they fixed the value of such services at from $1,000 to $1,500. Plaintiff gave no evidence upon this subject. The jury found that Judge Scripture's services were worth $350, and deducted that sum from the amount conceded to be due upon the note.

Defendant urges that the jury entirely disregarded the evidence of his witnesses, and that, as there is no evidence in the case that his services were worth less than the sum fixed by his witnesses, there is no evidence to support the verdict, or at least that the verdict is against the weight of evidence, and should, therefore, be set aside.

It must be conceded that the jury did disregard the evidence of defendant's witnesses as to the value of the legal services performed. Defendant insists that the jury had no right so to do, but were bound by the testimony of his witnesses. I cannot agree with that contention.

This testimony was in the nature of expert evidence. The witnesses were familiar with the value of legal services, and they gave their estimate of the worth of the services performed. They were not testifying to facts, but to their opinion. The rule is well settled that the weight to be given to opinion evidence is, within the bounds of reason, entirely for the determination of the jury. This is so whether the subject of the inquiry be a question of value, or other matters concerning which the skilled and learned are more competent to speak than the layman.

It has repeatedly been held in cases where the value of a lawyer's services has been involved, that the testimony of skilled witnesses as to value is not conclusive, even though such evidence is not contradicted. Such testimony is advisory only, and the jury is not bound to accept or adopt it. (*Head* v. *Hargrave*, 105 U. S. 45; *Brooklyn Heights R. R. Co.* v. *Brooklyn City R. R. Co.*, 124 App. Div. 896; affd., 196 N. Y. 502; *Jetter* v. *Zeller*, 119 App. Div. 179; *Charman* v. *Tatum*, 54 id. 61; affd., 166 N. Y. 605; *Schlesinger* v. *Dunne*, 36 Misc. 529.)

In *Head* v. *Hargrave* (*supra*) the trial court refused to charge

the jury that they were not bound by the testimony of the expert witnesses called by the plaintiff, who fixed the value of his services, and could disregard it, if in their judgment the value fixed by the witnesses was unreasonable. The Supreme Court of the United States held that such refusal constituted reversible error. The court says (at pp. 49, 50): " The evidence of experts as to the value of professional services does not differ. in principle, from such evidence as to the value of labor in other departments of business, or as to the value of property. So far from laying aside their own general knowledge and ideas, the jury should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinions expressed; and it was only in that way that they could arrive at a just conclusion. * * * Other persons besides professional men have knowledge of the value of professional services; and, while great weight should always be given to the opinions of those familiar with the subject, they are not to be blindly received, but are to be intelligently examined by the jury in the light of their own general knowledge; they should control only as they are found to be reasonable."

In *Brooklyn Heights R. R. Co.* v. *Brooklyn City R. R. Co. (supra)* the evidence as to the value of plaintiff's legal services was not disputed, yet it was held not to be conclusive.

In *Charman* v. *Tatum (supra)* all the expert witnesses agreed that plaintiff's legal services were fairly worth the sum of $5,000. It was held that the jury was not bound by such evidence to find for the plaintiff in the sum of $5,000.

In *Schlesinger* v. *Dunne (supra)*, which was an action by an attorney to recover for legal services, three experts fixed the value of such services at from $250 to $500, and one expert produced by the defendants estimated their value at $25. The verdict was $40. The court says: " Expert evidence, after all, is merely the opinion of the witnesses offered, and the court or jury may exercise an independent judgment in determining how far it will follow the opinions expressed."

*Jetter* v. *Zeller (supra)* is on all fours with the case at bar. Defendant was a lawyer. He was sued to recover a loan he had made of the plaintiff. He counterclaimed for legal services performed for the plaintiff. He and his expert witness testified as to the value of such services. Plaintiff gave no evidence whatever as to value. The jury allowed much less than the amount fixed by the defendant and his expert witness. On appeal the defendant insisted that he should have been awarded all that he proved his services to have been worth, because there was no other

evidence of value before the jury. The Appellate Division, First Department, held that the jury was not bound to accept the estimate given by defendant and his expert, but were permitted to apply their own judgment and experience and determine such value accordingly.

In *The Conqueror* (166 U. S. 110) the question of the weight of expert testimony as to value was before the court, and the rule was summed up in the following language: " In short, as stated by a recent writer upon expert testimony [Rogers on Expert Testimony, § 207], the ultimate weight to be given to the testimony of experts is a question to be determined by the jury; and there is no rule of law which requires them to surrender their judgment, or to give a controlling influence to the opinions of scientific witnesses."

It has repeatedly been held in negligence actions that testimony of physicians as to the value of their services performed for the injured party is merely advisory and not binding. (*Tooker* v. *Brooklyn Heights R. R. Co.*, 80 App. Div. 371; *Guyon* v. *Brooklyn Heights R. R. Co.*, 49 Misc. 514; *Lawlor* v. *French*, 14 id. 497.)

In *Cornish* v. *Farm Bldgs. Fire Ins. Co.* (74 N. Y. 295) several experts testified that vacancy increased the insurance risk, while no witnesses testified to the contrary. Nevertheless it was held that the question of whether that was so or not was for the jury to determine.

In the light of these authorities there can be no doubt but what the testimony of Messrs. Cookinham, Willis and Dowling was advisory only, and that the jury were not bound to accept their estimate of the value of defendant's services. This is not a case where experts alone are capable of determining the value of legal services.

Under our jurisprudence the jury is the tribunal charged with the duty of judicially determining the value of defendant's services, and not the expert witnesses sworn. The jury may accept or reject the opinions of others, although they may be well fitted to speak upon the subject. The jury may take into consideration in arriving at their verdict their own judgment and experience.

Assuming that the court might have arrived at a very different verdict had he been the trier of the fact, still he has no right to set aside the verdict of the jury for that reason. (*Dashnau* v. *City of Oswego*, 204 App. Div. 189.)

I am compelled, therefore, to conclude that my former decision denying defendant's motion for a new trial upon the judge's minutes was right.

This brings us to the other ground upon which this motion is made, namely, that the jury was biased, and that defendant did

not have a fair trial because of such bias and prejudice. The basis of this claim is an alleged assertion of Mr. Corts, one of the jurors, who was heard to remark while the case was on trial, that the defendant was an official referee, drawing a salary of $5,000 a year, and " What's a thousand dollars to him? " Mr. Corts denies making any such assertion. Assuming, however, that the statement was actually made, would that be a sufficient ground upon which to set aside this verdict? I think not.

A casual remark of that kind does not to my mind necessarily indicate bias, nor is it evidence that the jury as a whole, or that this particular juror, did not consider defendant's case on the merits. We must assume, until the contrary appears, that a jury follows the instructions of the court and bases its verdict upon the evidence. A litigant can never choose the jury before whom he might desire to try his case. He must take, subject to legal objections, and the challenges allowed by law, the men whose names are drawn from the box.

It is very true that a verdict may, and in a proper case ought to be set aside for any misconduct on the part of a juror. A party is entitled to a fair and impartial trial at the hands of an honest and unprejudiced jury. New trials have been granted many times in the interest of justice. But there must be a finality to litigation, and I do not think that a court would be justified in setting aside a verdict and granting a new trial on any such casual remark of a juror as it is claimed was made in this instance.

There is another reason which demands a denial of this motion, even if it should be held that the remark of the juror Corts showed a bias and prejudice against the defendant. The information upon which defendant now relies came to the attention of his counsel during the progress of the trial, yet he failed to call the court's attention to the situation, or to ask for any relief. He made no protest, but proceeded with the trial, although he knew then what he knows now concerning the juror who had expressed what he now claims to be an improper remark and to show a prejudiced and biased disposition. The proper time to lock the barn is before the horse has been stolen. The rule is well settled that when one is surprised by some irregularity or something which has happened during a trial he cannot proceed, make no intimation of his surprise, ask for no relief, take his chances of a favorable verdict, and then, if disappointed in the result, be granted a new trial. (*Hapgoods* v. *Lusch, No. 2,* 123 App. Div. 27; *Harvey* v. *Fargo,* 99 id. 599; *Dixson* v. *Brooklyn H. R. R. Co.,* 68 id. 302; *Rubenfeld* v. *Rabiner,* 33 id. 374; *Sayer* v. *King,* 21 id. 624; *Smith* v. *Rentz,* 73 Hun, 195; *Peck* v. *Hiler,* 30 Barb. 655; *Leonard* v. *Germania Fire Ins.*

*Co.,* 2 Misc. 548; *Roediger* v. *Kraft,* 152 N. Y. Supp. 327; *Dilling-ham* v. *Flack,* 43 N. Y. St. Repr. 806; *Cole* v. *Fall Brook Coal Co.,* 32 id. 762; *Tigue* v. *Annowski,* 24 id. 931; *Foster* v. *Easton,* 19 id. 447; *Whitney* v. *Saxe,* 18 id. 1020; *Seaman* v. *Koehler,* 12 id. 582; *Hurlbert* v. *Parker,* 5 id. 454; *Soule* v. *Oosterhoudt,* 20 Wkly. Dig. 67; *Messenger* v. *Fourth National Bank,* 48 How. Pr. 542; *People* v. *Marks,* 10 id. 261.)

In *Hurlbert* v. *Parker (supra)* plaintiff sought a new trial upon the ground of surprise, claiming that the unexpected absence of one of his attorneys and the retirement of the other after the trial had commenced confused and embarrassed the situation, and that the attorney who tried the case coming in unprepared at the eleventh hour was unable to properly try the same. The court held that plaintiff was foreclosed from asking for another trial after the verdict had been rendered against him because he made no complaint during the trial, and failed to ask for an adjournment or for leave to withdraw a juror.

In *Leonard* v. *Germania Fire Ins. Co. (supra)* a party answered ready on the call of the calendar and proceeded to trial in the expectation that an absent witness would arrive in time. Held, that he took his chances on the failure of the witness to appear and was not entitled to a new trial on the grounds of surprise.

In *Tigue* v. *Annowski (supra)* the defendant claimed to have been surprised on the trial by the unexpected absence of one of his witnesses. He made no complaint to the court but proceeded with the trial. Motion for a new trial after the verdict was denied.

In *Foster* v. *Easton (supra)* plaintiff was ill and unable to attend the trial. Certain of defendant's witnesses gave evidence which plaintiff did not anticipate would be competent, and which could have been contradicted by the plaintiff had she been present. No suggestion of surprise was made to the trial court, nor was any request made for an adjournment or for an opportunity to procure plaintiff's testimony. Held, that plaintiff's surprise was not manifested early enough.

In *People* v. *Marks (supra)* the court says (at p. 263): " A plaintiff has no right to be surprised by evidence within the issues. If, however, he is, he must find out his surprise at the trial, and he can then apply to the court for leave to withdraw a juror, or submit to a non-suit. But he can never, after having submitted his cause, on finding that the verdict or judgment is against him, become surprised, and ask the court to relieve him from an error, mistake or omission."

In *Seaman* v. *Koehler (supra)* the court says: " The claim of

surprise was not put in at the trial, and it was too late to file it afterwards."

In *Sawyer Paper Co.* v. *Luney* (68 Mo. App. 1) a new trial was denied a party who claimed that, by reason of her fright and embarrasment, she had made a mistake in her testimony, because she had not acted with diligence, and called attention of the court to the alleged mistake before the case was closed.

Defendant knowing the situation of which he now complains, ventured to proceed with the trial before the jury which he now claims was prejudiced and biased. The result may show that the experiment was improvident. I think, however, that the defendant must suffer rather than the plaintiff. He took his chances and cannot be heard to complain now because he got the worst of it. This rule seems to be well settled by the numerous cases above cited.

I feel constrained to deny defendant's motion.