404 P.2d 339

David CLARK, an Infant, by Don Clark, his guardian ad litem, Plaintiff-Appellant,

v.

Raymond K. STITES, d/b/a Bonneville Cycle Shop, Defendant-Respondent.

No. 9617.

Supreme Court of Idaho.

July 20, 1965.

Don Clark, pro se.

Raymond K. Stites, pro se.

KNUDSON, Justice.

This action was commenced by plaintiff-appellant in the probate court of Bannock County, Idaho, seeking to recover from defendant-respondent, as a result of his disaffirmance of a contract with defendant, the sum of $180.00 and interest, together with damages in the amount of $100.00. From the judgment in favor of defendant the plaintiff appealed to the district court in Bannock County. Following a trial de novo before the district court sitting without a jury, judgment was entered in favor of defendant and this appeal is from said judgment.

Under plaintiff's complaint it is alleged that on or about June 1, 1963, plaintiff entered into a contract with defendant for the repair of a motor-bike; that defendant was required by the terms of said contract to repair the motor-bike and cause it to be in good running order; that defendant did not properly repair the motor-bike; that on or about September 21, 1963, plaintiff disaffirmed said contract, offered to restore the consideration or pay its equivalent, and demanded the return of his money.

It is undisputed that at all times referred to in this action David Clark was a minor of 18 years of age; that on or about June 1, 1963, he took his motor-bike motor to the defendant's place of business for the purpose of getting it repaired. That in the process of making such repairs defendant supplied and installed new parts and provided machinist's services for which he charged $180.00 which was paid by plaintiff.

Under appellant's assignments of error it is claimed that the trial court's findings of fact are not supported by the evidence. We shall consider such findings in their numerically stated order.

Finding No. I provides:

"That the Plaintiff, David Clark, on June 3, 1963, delivered to the Defendant, Bonneville Cycle Shop, a disassembled motorbike motor, and that the agreed price for the services of repair was $180.00; that the motor was assembled in accordance therewith by a mechanic, John Sanford; that after said motor had been assembled, the sum of $180.00 was tendered and paid to Defendant by Plaintiff David Clark."

Plaintiff does not separately discuss this finding; however both parties testified that

on June 3, 1963, plaintiff delivered to defendant a disassembled motor-bike motor. The bike frame was not brought in to be repaired.

The following quoted testimony of John L. Sanford, the mechanic who performed the repair work, supports the finding that it was repaired in accordance with plaintiff's request, to-wit:

"Q And what work did you do on the motor?

"A I completely overhauled the engine.

"Q Did you assemble this into the frame?

"A No, I did not.

\* \* \*. \* \* \*

"Q At the time you completed the overhaul on the motor what was the condition of the motor, would you say?

"A Mechanically, it was excellent, but it needed a tune-up. It needed final adjusting.

"Q Mechanically, in your opinion, the motor was excellent?

"A Yes."

We shall now consider the court's finding No. II, which states:

"That Plaintiff, David Clark, intended primarily to use the motorbike for transportation for himself to and from his employment in the Island Park area; that for reasons not made known to the Court, the motorbike was non-functional, and even at the date of the hearing, said motorbike had not yet been made operational."

As concerns plaintiff's intended use of the motor-bike plaintiff testified on direct examination as follows:

"Q David, will you tell the Judge in your own words about this motorcycle?

"A Well, I went up to Mr. Stites' place of business to have the motorcycle fixed; and I was working at the time and I had a job and I needed it for transportation, and so forth; \* \*."

He also testified as follows, on cross-examination:

"Q David, you stated that it was quite important, that you needed this bike for transportation; where were you working at this time?

"A At this time I was working up in the Island Park area for the Forest Service.

"Q And you considered this bicycle essential to your work?

"A Yes; we had a cabin up there, which was around eight miles from the place where I had to go to meet the truck to take me on to work.

"Q And did you state this bike was used principally,—or you intended to

use it principally for this particular job?

"A Yes; that is what I had it for."
The foregoing quoted testimony of plaintiff unquestionably supports the first portion of said finding No. II.

As concerns the second portion of said finding, plaintiff testified that after the repair work had been done, the motor-bike "wasn't operating right," although he made no explanation as to why it "wasn't operating right." The only explanation as to why it was nonfunctional was given by defendant while being examined by plaintiff's father at which time he stated that David and a boy who was with him installed the motor in the bike; that his charge was for overhauling the engine so that it would run. He stated that the motor did run and in this connection testified as follows:

"Q How do you know it ran?

"A David rode it.

"Q Did you see him ride it?

"A Yes, you bet. He rode it from Blackfoot to my shop. It had to run.

"Q Didn't you testify that you saw David pull it?

"A That is right.

"Q With a pick-up?

"A Yes, sir; I did because the coil was bad on the frame, and the engine didn't have any power, and he pulled it behind his friend's car, and I told them they would have to have a coil after they checked it out because the coil was bad, so they loaded it into a car and took it to Blackfoot and he got a coil and put it on it and that engine was running when he brought it back to my shop.

"Q And he rode the engine back to your shop?

"A He rode that motor cycle from Blackfoot to Pocatello, him and a friend on it."

Defendant's foregoing quoted testimony accounts for some contributing causes of malfunction of the motor-bike when last observed by defendant but there is no evidence disclosing why it had not been made operational at the time of the trial.

The only other finding of fact is stated in paragraph III as follows:

"That neither the Plaintiff, David Clark, nor his father, Don Clark, guardian ad litem, had tendered the consideration received nor paid its equivalent value to the Defendant at the time of disaffirmance of the contract, nor had they done so at the time legal action was first instituted against the defendant."

Concerning this finding the record discloses plaintiff's testimony that he and his father asked defendant to disaffirm the contract

and return the $180.00. In explanation of what the disaffirmance consisted of the plaintiff testified as follows:

"Q Well, isn't it a fact, David, that at no particular time prior to suit did either you or your father attempt to return everything you received for the $180.00 that you paid?

"A No; we asked Mr. Stites if he would disaffirm the contract, and he said no, so we went home and hired an attorney, Mr. Crane, to represent us."

In this connection Don Clark, plaintiff's father and guardian ad litem, testified that he talked with defendant on only one occasion and in explanation of what the disaffirmance consisted of, stated as follows:

"Q And when you picked the bike up and left for home had you made any offer to return that which was received to Mr. Stites if he would refund the money he had received?

"A I did not offer,—no; I did exactly as Mr. Crane instructed me to do, asked him to rescind the contract and return the money. That was the offer. There was nothing else said.

"Q Rescind the contract, and return the money?

"A Well, I said it this way, to use his term,—to disaffirm the contract. We disaffirmed the contract and asked him for the $180.00, and that is all that was said."

Plaintiff's right to disaffirm is governed by I.C. § 32–103, which provides:

"In all cases other than those specified in the next two (2) sections the contract of a minor, if made whilst he is under the age of eighteen (18), may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards; or, in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor whilst he is over the age of eighteen (18), it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent."

Since plaintiff was over the age of 18 years at the time he entered into this deal with defendant, his right to disaffirm is contingent upon restoring the consideration or paying its equivalent.

■ The declaration of disaffirmance made by or on behalf of plaintiff constituted sufficient notice of plaintiff's election and decision to disaffirm, however notice of such decision is not the only requirement to accomplish a complete disaffirmance on the part of plaintiff. The undisputed evi-

dence is that new parts for plaintiff's motor-bike were provided and installed by defendant and that the services of a skilled mechanic and machinist were also provided.

Under I.C. § 32–103 the consideration to be restored is what plaintiff received from defendant. That, in this case, consisted of motor parts and services. The services themselves not being capable of restoration plaintiff is required to return their equivalent, which is the reasonable value of such services. Spencer v. Collins (1909), 156 Cal. 298, 104 P. 320.

Defendant testified that he had to send the cylinder of the motor to a machine shop to be rebored and the valves reground, the cost of which he estimated to be $70.; that the shop labor of his mechanic on the motor amounted to approximately $50. No attempt was made on the part of plaintiff to introduce or prove the number or value of new parts which were installed by defendant nor the reasonable value of the services rendered.

Plaintiff's guardian testified before the district court that "we have offered to give all the parts back, part for part." The witness did not state when such offer was made. This testimony is specifically de-nied by defendant and it became the prerogative of the trial court to give such weight and credence to the testimony of each party as the court considered proper.

It is true that the guardian also stated, at the time of trial, that "we make this offer again today. We will very gladly give you the new parts for old parts, and if the court feels this is not fair and just, we will even give back the new parts without the old parts." There is no evidence whatever that plaintiff or his guardian have at any time offered to pay the reasonable value of the services rendered. Since plaintiff instituted this action to accomplish a complete disaffirmance, it became his obligation to establish that he is entitled to the return of the $180.00 or a portion thereof, which was paid by him to defendant. This he has failed to do.

We conclude that the trial court's findings are supported by a preponderance of the evidence and this court will not disturb the findings and judgment when so supported. Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.